IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
Case Nos. 24-2788 and 24-3057

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

**REPLY IN SUPPORT OF MOTION FOR CLARIFICATION OF ORDER
<u>GRANTING INJUNCTIVE RELIEF IN PART</u>**

The National Labor Relations Board ("NLRB" or the "Board") and the Intervenor Newspaper Guild of Pittsburgh/CWA Local 38061 ("Guild") argue that this Court's March 24, 2025 Order [ECF No. 57], requires PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette ("Post-Gazette" or the "Company") to reinstate healthcare coverage for Guild-represented employees through the Western Pennsylvania Teamsters and Employers Welfare Fund ("Fund"). [ECF No. 60 at pp. 2-4; ECF No. 61 at pp. 2-4].

The Order, however, *does not* state that re-instatement to the Fund is required. Instead, the Order requires the Post-Gazette to (1) upon request, "*rescind* the changes in the terms and conditions of employment related to health insurance for its unit employees that were unilaterally implemented on about July 27, 2020[,]" and (2) "*before implementing any changes*" notify, and upon request, bargain with the Guild. [ECF No. 57 (emphasis added)]. The Order makes sense because it is consistent with the Board's Decision that ordered the Post-Gazette to "[o]n request by the Union, rescind the changes in the terms and conditions of employment for unit employees." [JA0053]. Indeed, there is no requirement in the Board's Decision to re-instate coverage through the Fund.[1]

The Post-Gazette has done precisely what the Order requires – offer to rescind the Company's healthcare plan and bargain with the Guild. Specifically, since the Order was entered, the Post-Gazette offered to engage in (1) the effects bargaining called for by the Order pertaining to healthcare insurance, (2) contract bargaining to reach a successor collective bargaining agreement, and (3) FED. R. EVID. 408 strike settlement negotiations. [*See* Exs. 1, 2, and 3]. In response, despite stating that it "will, of course, continue to bargain towards a successor collective bargaining

---

[1] The interpretation of the Court's Order proffered by the Board and the Guild is also inconsistent with the fact that, to date, the Guild has not made an unconditional offer to return to work. Until that time, striking employees are not entitled to Company-sponsored health insurance benefits.

agreement" [*See* ECF No. 61 at p. 5], the Guild rejected *all* the Post-Gazette's offers to bargain and threatened to "seek sanctions." [*See* Ex. 4].

In addition to being wrong on the content of this Court's Order, the Board asserts that there is "no evidence that re-instituting the [Fund] would be an impossibility." [ECF No. 60 at p. 4].  As set forth by the undersigned at oral argument, that is far from a certainty.  While the Guild-represented employees were removed from coverage through the Fund in 2020, additional Post-Gazette employees remained in the Fund until September 30, 2022, when the Fund *kicked out* the employees and *refused* to offer coverage to any of the Company's employees. Currently, no Post-Gazette employees receive coverage through the Fund.  Nor is the Post-Gazette a contributing employee to the Fund.[2]

Further, there is no evidence that the Fund would offer coverage under the terms that existed *eight years ago*.  Rates and plan designs may differ from what was offered in 2017 and the Post-Gazette would be required to bargain with the Guild over the revised conditions.  *See Clear Pine Mouldings Inc.*, 238 NLRB 69 (1978), enf'd. 632 F.2d 721 (9th Cir. 1980).

---

[2]    Complicating matters further, the Fund is administered by the Teamsters labor union.  The Guild-represented employees are not members of the Teamsters. Further, no Teamsters-represented employees currently work for the Post-Gazette due to a strike settlement agreement executed in April 2024.

In short, the NLRB and Guild are attempting to receive a remedy beyond what this Court (and the Board) ordered. The Post-Gazette seeks clarification to address the NLRB and Guild's claims.

| | |
|---|---|
| Respectfully submitted<br>this 7th day of April 2025 | */s/ Brian M. Hentosz*<br>Brian M. Hentosz (PA ID No. 317176)<br>bhentosz@littler.com<br>Morgan S. Dull (PA ID No. 322712)<br>mdull@littler.com<br><br>LITTLER MENDELSON, P.C.<br>One PPG Place, Suite 2400<br>Pittsburgh, PA 15222<br>Tel: 412.201.7676 / 7622<br>Fax: 412.291.1241<br><br>*Attorneys for Petitioner/Cross-Respondent PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette* |

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Brian M. Hentosz, counsel for Petitioner PG Publishing Co, Inc. d/b/a Pittsburgh Post-Gazette, certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit. I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Motion for Clarification of Order Granting Injunctive Relief In Part is proportionately spaced and has a typeface of 14-point Times New Roman, contains 594 words (not counting those portions excluded from the word count by Rule 32(a)(7)(B)(iii)), and that the text of the electronic brief is identical to the text of the paper copies. I further certify, pursuant to Local Appellate Rule 31.1(c), that Windows Defender has been run on this Brief before filing and that no virus was detected.

Dated: April 7, 2025

*/s/ Brian M. Hentosz*
Brian M. Hentosz (PA No. 317176)

*Attorneys for Petitioner/Cross-Respondent, PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April 2025, I electronically filed the foregoing PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette's ***Reply in Support of Motion for Clarification of Order Granting Injunctive Relief in Part*** with the Clerk for the United States Court of Appeals for the Third Circuit by using the CM/ECF system which will send notification of such filing to all parties of record.

          */s/ Brian M. Hentosz*
          Brian M. Hentosz

# EXHIBIT 1

Case: 24-3057  Document: 58  Page: 7  Date Filed: 04/07/2025

# KING & BALLOW
LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

March 28, 2025

<u>**Via Email and U.S. Mail**</u>
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

Re: Effects Bargaining with Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Joe:

As you are aware, yesterday the Post-Gazette filed a Motion for Clarification of the Order Granting Injunctive Relief in Part. The Company is ready to negotiate over the effects of the Court's Order to "rescind the changes in the terms and conditions of employment related to healthcare."

The Company is available next week, beginning Thursday, April 3, 2025 to bargain over the effects of the Court's Order on healthcare.

Please let me know if that works for the Union and I will secure a meeting room at the Omni.

Sincerely,

Richard C. Lowe

cc: Rob Weber

# EXHIBIT 2

# KING & BALLOW
### LAW OFFICES
### 26 CENTURY BOULEVARD
### SUITE NT 700
### NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456

FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

March 28, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

      Re:    Contract Negotiations with Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Joe:

      Thank you for your March 26, 2025 letter in which you request contract negotiations. The parties met last in contract negotiations on November 13, 2024. At that meeting, Union President, Mr. Zach Tanner inexplicably threw a chair through a wall in a meeting room at the Omni William Penn Hotel. Mr. Tanner was later charged with a Police Criminal Complaint for Criminal Mischief because of this destruction of hotel property. Please let me know if hotel security at the Omni will allow Mr. Tanner to enter hotel property to attend future meetings at the Omni. If he can, I suggest we meet again for our next contract negotiations at the Omni.

      The Company is available next week, beginning Wednesday, April 2, 2025 to continue contract negotiations. We are not amenable to the presence of a mediator for the reasons we shared with you in the past.

      The Company looks forward to our next meeting.

Sincerely,

Richard C. Lowe

cc:    Rob Weber

# EXHIBIT 3

Case: 24-3057   Document: 58   Page: 12   Date Filed: 04/07/2025

# KING & BALLOW
LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

March 27, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

Re: Confidential Strike Settlement Discussions Pursuant to Rule 408 of the Federal Rules of Evidence and Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Joe:

As you are aware, the Post-Gazette and four (4) other unions at the Newspaper each reached a Labor Dispute Settlement Agreement ("Agreement") which settled its strike against the Company on an amicable basis. The Teamsters, Pressmen, Mailers and the Advertising bargaining units all engaged in successful confidential settlement discussions under Rule 408 of the Federal Rules of Evidence to reach these Agreements.

The Agreements are fair to both parties. For example, Administrative Law Judge Lisa Friedheim-Weis fully supported and endorsed the Labor Dispute Strike Settlement Agreement reached with Teamsters Local Union 211/205 in April 2024. I have attached a copy of Judge Friedheim-Weis's Order approving the Labor Dispute Settlement Agreement to settle the strike. (Attachment 1). The judge found the settlement agreement to be reasonable and that it satisfied the reasonableness standard set forth in *Independent Stave*, 287 NLRB 740 (1987).

In March 2025, the Mailers, Pressmen and Advertising unit unions each signed a substantially similar Labor Dispute Settlement Agreement amicably settling its strike against the Post-Gazette.

LOS ANGELES OFFICE:
2121 AVENUE OF THE STARS, SUITE 800 · LOS ANGELES, CALIFORNIA 90067 · TELEPHONE: 424/253-1255 · FACSIMILE: 888/688-0482

      The Company invites the Union to also participate in confidential strike settlement discussions under Rule 408 so that an amicable agreement to end the Union's strike can be reached. The Company is available next week, beginning Tuesday, April 1, 2025 to engage in Rule 408 discussions. I look forward to a favorable response from the Union.

Sincerely,

Richard C. Lowe

Attachment

cc:    Rob Weber

**Attachment 1**

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES

PG PUBLISHING CO., INC.,
d/b/a PITTSBURGH POST-GAZETTE

Respondent

Case 06–CA–302612

and

NEWSPAPER, NEWSPRINT, MAGAZINE
AND FILM DELIVERY DRIVERS,
HELPERS AND HANDLERS, A/W THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AND ITS LOCAL UNION
NO. 211/205 OF ALLEGHENY CO.

Charging Party

### ORDER APPROVING SETTLEMENT AND CONDITIONALLY CLOSING TRIAL RECORD

Trial proceedings in this case were held before me at Region 6 from January 22-25, 2024. During trial, the parties presented evidence related to complaint allegations that Respondent violated Section 8(a)(5) and (1) of the National Labor Relations Act by failing to bargain with the Charging Party.

As of the issuance of this Order, post-trial briefs had been set for submission on April 19, 2024. However, on April 16, 2024, I received email communications from Counsels for the General Counsel, Respondent, and Union, along with a non-Board settlement of the litigated matter, and encapsulating the two open cases between the parties, which had not been part of the instant proceeding, and for which complaint has not issued. The parties have requested approval of the non-Board settlement and a conditional withdrawal of the charge with a 60-day maximum period to ensure compliance and allow for a waiver period.

Since the trial record is open and the case is under my jurisdiction, I must evaluate whether the settlement should be approved under the applicable legal standard.

**Applicable Legal Standard**

In *UPMC*, 365 NLRB No. 153 (2017), the Board announced that it was returning to the practice of analyzing all settlement agreements under the reasonableness standard set forth in *Independent Stave*, 287 NLRB 740 (1987). The *Independent Stave* standard

requires the judge to examine all the surrounding circumstances to determine whether a proposed non-Board settlement agreement is reasonable, including considering the following factors:

> (1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the settlement;
>
> (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of litigation;
>
> (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and
>
> (4) whether the respondent has engaged in a history of violations of the Act or has breached previous settlement agreements resolving unfair labor practice disputes.

*UPMC*, 365 NLRB No. 153, slip op. at 7 (quoting *Independent Stave*).

**Discussion and Analysis – Is the Proposed Settlement Agreement Reasonable under *Independent Stave*?**

I have reviewed the non-Board settlement that the parties have presented and executed.

*Independent Stave* Factor One

Respondent and Teamsters Local Union No. 211/205 (Charging Party) have agreed to be bound by the proposed non-Board settlement agreement. Counsel for the General Counsel has agreed in writing that it has no objection to the non-Board settlement agreement. Based on the parties' positions and in the absence of any objections, I find that the first *Independent Stave* factor weighs in favor of approving the proposed settlement.

*Independent Stave* Factor Two

The non-Board settlement provides an adequate measure of relief to the General Counsel, to the Union, and also to members of the bargaining unit at issue, for the alleged violations in the complaint, taking into account the nature of the alleged violations, the risks inherent in litigation, and the stage of litigation. Although the parties presented all their evidence on the matter, the merits of the complaint allegations still hang in the balance, pending the parties' post-trial briefs, and my decision based on the evidentiary record. Given those variables, I find that *Independent Stave* factor two favors approving the proposed settlement agreement.

2

*Independent Stave* Factor Three

      I find that *Independent Stave* factor three favors approval of the proposed settlement agreement. There are no allegations or evidence of any fraud, coercion, or duress by any party in reaching the proposed settlement agreement.

*Independent Stave* Factor Four

      I have not been advised of any prior unfair labor practice findings against Respondent concerning this Charging Party or this bargaining unit that would indicate that Respondent has engaged in a history of violations of the Act. I also have not been advised of any evidence that Respondent has breached previous settlement agreements resolving unfair labor practices. Accordingly, I find that *Independent Stave* factor four favors approving the proposed settlement agreement.

Conclusion

      After considering the proposed settlement agreement, the surrounding circumstances, and each of the *Independent Stave* factors, I find that the proposed settlement agreement is reasonable and satisfies the *Independent Stave* standard for approval. Accordingly, I hereby approve the settlement in this case and enter the following:

**ORDER**

      With good cause being shown, I hereby approve the non-Board settlement that the relevant parties have executed. As the settlement agreement resolves all complaint allegations, the trial record in this case is hereby conditionally closed until June 17, 2024, at such time, absent an objection made in writing by a party, the trial record shall be automatically and permanently closed. The briefing schedule for this matter shall be held in abeyance until such time that the trial record is permanently closed or there is a written objection filed during the conditional closing period.

IT IS SO ORDERED.

Dated: April 17, 2024
Washington, D.C.

*[signature]*
Lisa Friedheim-Weis
Administrative Law Judge

3

# EXHIBIT 4




Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

March 31, 2025

**VIA EMAIL
AND FIRST CLASS MAIL**
Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:     Newspaper Guild of Pittsburgh and Post-Gazette

Dear Richard:

    I received your correspondence of March 28, 2025, as well as your correspondence seeking the Guild's consent to engage in discussions pursuant to Rule 408. As to your request to negotiate pursuant to Rule 408, the production units were in a far different position than the News Guild. For the past eight (8) years you have been telling them the Post-Gazette was going to be a strictly digital newspaper, and subsequently the Post-Gazette sold its "printing press." A buyout to those unions was an alternative to bargaining for a contract when there would no longer be any print editions.

    The News Guild on the other hand is in a far different position. The Newspaper Guild of Pittsburgh are journalists and love being journalists. Obviously, the Post-Gazette going to a digital newspaper has absolutely no impact on journalists except for the fact the Post-Gazette would most likely need more journalists. Therefore, the News Guild has no interest in selling the jobs of its members. Your request to bargain pursuant to Rule 408 is respectfully rejected.

    As for your letter of March 28, 2025, wherein you request the Guild engage in "effects bargaining" you obviously suffer a misconception of the historically accepted standard that when an employer's illegally implemented terms are rescinded the employer restores the conditions that existed prior to their illegal implementation. Under your convoluted theory the PGs illegal activity is rewarded if the union requests the employer rescind the illegally imposed healthcare. Under your theory, considering the Post-Gazette's history of bad faith bargaining a new healthcare agreement may take years. In the meantime, the Post-Gazette will continue its bad faith bargaining and gain leverage when the illegally implemented healthcare is removed leaving the employees without any healthcare.

219 Fort Pitt Boulevard 1st Floor, Pittsburgh, PA 15222-1576  Ph: 412.281.3850 • 412.261.0147  F: 412.281.1985
facebook.com/jpilaw  www.jpilaw.com



The Motion for clarification which the PG filed is nothing more than another delay tactic- a tactic the Post-Gazette has engaged in for the past eight (8) years. We shall be filing a Response to that Motion and seeking sanctions. Once the healthcare contained in the recently expired agreement is reinstated we can begin bargaining for the terms and conditions of a new Agreement.

There is no "effects bargaining" when a Court Order allows the union to request illegally implemented terms be removed, because the expired agreement is put in its place. We urge the company to move forward as quickly as possible to reinstate the healthcare program set forth in the expired Collective Bargaining Agreement as interpreted by Arbitrator Nadelbach and enforced by the US Court of Appeals for the Third Circuit so that the PG can move forward with its obligation to engage in good faith bargaining for a new Collective Bargaining Agreement. If you have any questions please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc: Zack Tanner