**No. 24-2788 and 24-3057**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

PG PUBLISHING CO., INC. d/b/a PITTSBURGH POST-GAZETTE

*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent*,

and

NEWSPAPER GUILD OF PITTSBURGH/CWA LOCAL 38061

*Intervenor.*

---

Petition for Review of National Labor Relations Board Decision and Order

---

**PETITIONER'S REPLY BRIEF**

---

Brian M. Hentosz (PA No. 317176)
Morgan S. Dull (PA No. 322712)
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
PH: 412-201-7676 / 7622
FX: 412-291-1241
bhentosz@littler.com
mdull@littler.com

Attorneys for Petitioner
*PG Publishing, Inc. d/b/a Pittsburgh
Post-Gazette*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................1

II.     MATERIAL MISREPRESENTATIONS ...........................................3

III.    ARGUMENT........................................................................................4

      A.      The Board and Guild's Arguments in Support of the "Less Rights" Theory Lack Merit. .................................................4

            1.      The argument that the Decision was based on the "totality" of the Post-Gazette's conduct strains logic...............4

            2.      The "less rights" theory is *only* "settled law" if accompanied by unlawful conduct away from the table. ..........5

            3.      The Board's waiver argument is inconsistent with the record........................................................................................8

            4.      The Board attempt to demonstrate that the "less rights" theory does not conflict with *Endurance Environmental Solutions, LLC*, 373 NLRB No. 141 (2024) is weak. ..............10

      B.      The Board's Impasse Theory is Contrary to the Law and the Facts.........................................................................................11

            1.      The Post-Gazette was prohibited from implementing discretionary proposals based on the law. ..............................11

            2.      The parties did not "pause bargaining" – the Guild "picked up their ball and went home." ...................................11

            3.      The Post-Gazette did not meet in-person to discuss the Guild's September 2019 counteroffer because the Guild refused to meet. .....................................................................13

            4.      The Guild's July 20, 2020 letter did not break the bargaining impasse because it contained no movement. ........13

      C.      The Court Cannot Enforce the Portions of the Decision's Remedy that Exceed the Board's Authority.....................................15

IV.     CONCLUSION.................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10 Roads Express*,
    372 NLRB No. 105 (July 14, 2023) ..............................................5, 8

*Alaris Health at Boulevard East v. NLRB*,
    123 F.4th 107 (3d Cir. 2024) ....................................................4

*Altura Communication Solutions, LLC*,
    369 NLRB No. 85 (2020) .........................................................6, 7

*Continental Ins., Co. v. NLRB*,
    495 F.2d 44 (2nd Cir. 1974) ....................................................7

*Endurance Environmental Solutions, LLC*,
    373 NLRB No. 141 (2024) .......................................................10

*First National Maintenance Corporation v. NLRB*,
    452 U.S. 666 (1981).................................................................10

*H.K. Porter Company v. NLRB*,
    397 U.S. 99 (1970)..................................................................10, 14

*Hood River Distillers, Inc*., JD-74-21 at slip op. at 41, fn. 33 (ALJ
    Carter, December 10, 2021)......................................................11

*Kayser-Roth Hosiery Co., Inc*.,
    176 NLRB No. 139 (1969) .......................................................8

*Kitsnap Tenant Support Serv.*,
    366 NLRB No. 98 (2018) .........................................................7

*Loper Bright Enterprise v. Raimondo*,
    144 S. Ct. 2244 (2024)............................................................4

*McClatchy Newspapers, Incorporated v. NLRB*,
    131 F.3d 1026 (D.C. Cir. 1997).................................................11

*New Concepts for Living, Incorporated v. NLRB*,
    94 F.4th 272 (3d Cir. 2024) .....................................................9, 12

ii

*NLRB v. American National Insurance Company,*
343 U.S. 395 (1952)...................................................................................8

*NLRB v. Holmes Tuttle Broadway Ford, Inc.,*
465 F.2d 717 (9th Cir. 1972) ...................................................................8

*NLRB v. PG Publ'g Co., Inc.,*
2:24-CV-01166-CB, 2025 WL 509305 (W.D. Pa. Feb. 13, 2025)..............12, 13

*NLRB v. Reed &Prince Mfg. Co.,*
205 F.2d 131 (1st Cir. 1953)....................................................................8

*NLRB v. Starbucks Corp.,*
No. 23-1953, ---F.4th---, 2024 WL 5231549 (3d Cir. Dec. 27,
2024) ........................................................................................................15

*NLRB v. Wright Motors, Inc.,*
603 F.2d 604 (7th Cir. 1979) ...................................................................7

*Public Service Company of Oklahoma v. NLRB,*
318 F.3d 1173 (10th Cir. 2003) ...........................................................6, 7

*Radisson Plaza Minneapolis v. NLRB,*
987 F.2d 1376 (8th Cir. 1993) .................................................................7

*Raytheon Network Centric Systems,*
365 NLRB 161, slip op. at 11-12, 1 .......................................................11

*Struthers Wells Corporation v. NLRB,*
721 F.2d 465 (3d Cir. 1983), .................................................................8

*Universal Camera Corp. v. NLRB,*
340 U.S. 474, 488, 496 (1951)..............................................................12

**Statutes**

National Labor Relations Act ..........................................................*passim*

iii

# I.    <u>INTRODUCTION</u>

This case involves whether PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette ("Post-Gazette" or the "Company") violated the National Labor Relations Act ("Act") by: (1) proposing contractual terms that gave the Company discretion as it transitioned to an "all-digital format;" and (2) declaring an impasse after bargaining with the Intervenor Newspaper Guild of Pittsburgh/CWA Local 38061 ("Guild") for 3½ years.[1]

In its opening brief, the Post-Gazette argued that the National Labor Relations Board's ("NLRB" or the "Board") Decision and Order ("Decision") should be vacated with respect to its bad faith bargaining finding because it is based *solely* on the Company's bargaining proposals containing discretion, which precedent holds is impermissible.  The Post-Gazette also argued that the Decision conflicts with the Board's *own precedent* and the Company's right to make "entrepreneurial decisions" concerning the "course and scope" of its business.  The Post-Gazette further argued that an impasse was clear because: (1) bargaining lasted 3½ years; (2) the Guild unilaterally terminated negotiations and labeled future bargaining as "fruitless" and

---

[1]    The case also involves whether the Post-Gazette violated the Act by engaging in unlawful surveillance because "company security guards pointed their cell phones at, and appeared to photograph" employees picketing at a private residence. However, in its brief, the Board admits the key element of the Post-Gazette's argument – there is *no evidence* that photographs were taken.  [ECF No. 52 at p. 51 ("security guards hired by the Company *appeared* to take photographs of rally participants") (emphasis added)].

"worthless;" (3) the Guild made no movement in response to the Company's impasse declaration; and (4) the parties remained far apart on key proposals despite engaging in 23 bargaining sessions. Finally, the Post-Gazette argued that the Decision's *Thryv* remedy conflicted with this Court's precedent.

The Board and the Guild respond by arguing the Decision's finding that the Post-Gazette bargained in bad faith by insisting "on provisions that left the Union with fewer rights and less protection than provided by law without a contract" (hereinafter, "less rights" theory): (1) does not look *solely* at the Company's bargaining proposals, but the Company's "overall [or totality] conduct" during negotiations; (2) is supported by existing law; and (3) the Company waived its right to contest the theory.[2] Next, the Board and Guild argue that the parties were not at a bargaining impasse because: (1) the Post-Gazette implemented employment terms "more favorable" than its Final Offer since the Company did not implement discretionary provisions; (2) the Guild offered to continue bargaining; and (3) the parties had not bargained, in-person over a Guild counter offer made approximately

---

[2]    The Board and the Guild both highlight that the Post-Gazette refused to negotiate with the "Unity Council" (a combination of the Guild and various production unions that represented employees at the Company) at the commencement of negotiations in 2017. [ECF No. 52 at pp. 3-4]; [ECF No. 53 at pp. 2-3]. This is a red herring. This type of "joint bargaining" is a permissive subject of bargaining and the Post-Gazette was under no obligation to submit to such bargaining. Additionally, because the Post-Gazette anticipated significant changes in its operations during the term of the next contract, the effects of these significant changes would impact each union differently.

2

10 months before the Company declared impasse.  Finally, the Board argues that the

Post-Gazette's arguments pertaining to its *Thryv* remedy are "waived."

The Board and Guild's arguments are meritless.

## II.    <u>MATERIAL MISREPRESENTATIONS</u>

The Board and Guild's briefing contains multiple misrepresentations

concerning the Post-Gazette's Final Offer.  Specifically:

> ➢    <u>Assignment of bargaining unit work</u>: the Final Offer did not provide the Company with an unrestricted right to assign work to supervisors or to subcontract work to non-company employees such as stringers.  Under the Final Offer, no employee could be laid off because of a supervisor performing bargaining unit work.  [JA1138-JA1162].  Likewise, the Company's subcontracting of work to freelance journalists was limited to 20% of the Guild's payroll.  [JA0301-0302, 1385].

> ➢    <u>Work hours</u>: the expired collective bargaining agreement ("expired agreement") between the Post-Gazette and the Guild *did not* guarantee a 40-hour work week.  The Final Offer *did not* contain a provision allowing the Post-Gazette to "enlarge or shorten the workday or workweek," it only provided that the Company could shorten the workweek in the event it reduced print days or digital offerings after bargaining with the Guild over the effects of its decision. [JA1344-1345; 1393, 0293-0294, JA0400-0401, 404].

> ➢    <u>Layoffs</u>: contrary to the Board's assertion, the Final Offer required the Post-Gazette to consider seniority, qualifications, performance, and skills in determining which employees would be laid off. [JA1138-JA1162].

> ➢    <u>No-strike</u>: the expired agreement contained a no-strike clause. [JA1416].  The Final Offer only proposed to add sympathy strikes, picketing, boycotts, and bannering language.  [JA1823-1861, RA0416-0418, 0453, 1199].  The proposal was in exchange for a broad grievance and arbitration provision.  [JA1159, 1195-96, 1199].

➢ <u>Wages</u>: the Board labels the Post-Gazette's wage proposal as not "meaningful." However, the Final Offer provided for up to 8% wage increases. [JA1142-1143, 1172-1175, 1340-1343; APPX0237].

➢ <u>Benefits</u>: contrary to the Board and Guild's assertions, the Post-Gazette proposed placing the Guild-represented employees on the *same* benefit plans (and under the same terms) as supervisory, non-union, and other union represented employees at the Company. [JA1162, 1203, 1371]. This is a plan enjoyed by over 2,600 employees at the Post-Gazette's parent company. [JA0377].

## III.   <u>ARGUMENT</u>

The Board argues that *Loper Bright Enterprise v. Raimondo*, 144 S. Ct. 2244 (2024), does not change the deference owed to the Decision. [ECF No. 52 at p. 21 n.3]. In contrast, the Guild acknowledges that, based on this Court's precedent, it is "somewhat of an open question." *See Alaris Health at Boulevard East v. NLRB*, 123 F.4th 107 (3d Cir. 2024). Irrespective of what level of deference (if any) is owed to the Board, *Loper Bright* makes clear that this Court must make an independent determination of whether the alleged conduct violates the Act. Contrary to the Board's desires, this is not a rubber stamp. Here, an independent analysis demonstrates that the Board's "less rights" theory is contrary to the Act, and its impasse theory is a straw man.

### A.   **The Board and Guild's Arguments in Support of the "Less Rights" Theory Lack Merit.**

1.   <u>The argument that the Decision was based on the "totality" of the Post-Gazette's conduct strains logic</u>.

The NLRB and Guild attempt to argue that the Board's bad faith bargaining

finding was based on the "totality" of the Post-Gazette's conduct during bargaining for a successor agreement. [ECF No. 52 at pp. 37-38]; [ECF No. 53 at p. 1]. However, immediately thereafter, the Board and Guild admit that the *only* evidence of bad faith bargaining are the Post-Gazette's proposals. [*See Id.*]. It appears that the Board and Guild argue that the Post-Gazette engaged in bad faith bargaining by making *too many* proposals that granted the Company discretion. [*See Id.*]. This begs the question: what combination of discretionary proposals are acceptable, and what combination violates the Act? This is the problem with the "less rights" theory: no one knows the combination except for the Board – and they won't tell employers.[3]

2. The "less rights" theory is *only* "settled law" if accompanied by unlawful conduct away from the table.

The NLRB and Guild argue that the "less rights" theory is "settled law" and cite to a series of cases, which they purport support this assertion. [ECF No. 52 at pp. 41-43]; [ECF No. 53 at pp. 35-37]. The problem with the assertion, however, is that every case that addressed "less rights" did so as part of the "totality" of

---

[3]    Another problem with the "less rights" theory is demonstrated by the Board's assertion that the Post-Gazette's "purported explanations for its proposals" are irrelevant. [ECF No. 52 at p. 43]. This is directly contrary to the traditional standard for bad faith bargaining in which the fact-finder "looks to the totality of the circumstances in which the bargaining took place." *10 Roads Express*, 372 NLRB No. 105, slip op at *5 (July 14, 2023). A bad faith bargaining inquiry must consider the circumstances facing the parties – here, the Post-Gazette lost $18,900,000.00 in 2016 and was preparing to transition to an "all-digital format" and the Guild was not interested in concessions. [JA0280, 0376-0377].

circumstances and found bad faith bargaining *only* where conduct occurred away from the table to support the finding.

The Board and Guild place a heavy emphasis on *Altura Communication Solutions, LLC,* 369 NLRB No. 85 (2020) and *Public Service Company of Oklahoma v. NLRB*, 318 F.3d 1173 (10th Cir. 2003), however, these cases are inapposite for the reason above. Specifically, the theory of liability in *Altura* demonstrates the distinction from "less rights:"

> The General Counsel's case for bad-faith bargaining does not rest solely, or even primarily, on the nature of the proposals advanced by the Respondent. Rather, the General Counsel argues that--apart from the nature of proposals insisted upon by the Respondent--the Respondent's bargaining conduct also supports a finding of bad-faith bargaining. Specifically, the General Counsel contends that the Employer repeatedly and prematurely declared impasse, bargained with no intention of reaching an agreement, refused to meet at reasonable times and/or places, and insisted that the union provide advance contract proposals as a condition of further bargaining. Finally, the General Counsel contends that the Employer unilaterally and unlawfully implemented portions of its bargaining proposal on January 1, 2016.

369 NLRB No. 85 (pin cites omitted in the opinion). In contrast, the Board's "less rights" theory rests *solely* on the Post-Gazette's bargaining proposals. Further, the employer's conduct in *Altura* was extreme and included a refusal to meet at reasonable times, an arbitration provision that stripped the union of its ability to challenge potential violations of the collective bargaining agreement and a proposal

requiring the union to agree to the Employer's employee handbook which the Employer could change at any time. *Id.* Likewise, in *Public Service Co. of Okla.*, the court found evidence of bad faith bargaining based on the employer's proposals *and* "an e-mail to its employees during the bargaining period aimed at obtaining a 'decertification election to remove the Union as collective-bargaining representative.'" 318 F.3d at 1177 n.3. Simply put, none of those circumstances are present here.

The other cases cited by the Board and Guild in support of the "less rights" theory are likewise inapposite because they involve allegations of unlawful conduct *away* from the bargaining table. *See Kitsnap Tenant Support Serv.*, 366 NLRB No. 98 (2018) (refusing to meet and supply information, disciplining employees for supporting the union, repudiating tentative agreements, and proposing to eliminate the right to arbitrate); *Radisson Plaza Minneapolis v. NLRB*, 987 F.2d 1376, 1382 (8th Cir. 1993) ("the Board properly found that Radisson's conduct away from the bargaining table supported an inference that Radisson failed to bargain in good faith" where the company unilaterally changed wage rates, refused to provide information, engaged in dilatory tactics, and maintained a rule prohibiting employees from engaging in protected concerted activity); *NLRB v. Wright Motors, Inc.*, 603 F.2d 604, 609-10 (7th Cir. 1979) (refusal to provide rationale for bargaining proposals and refusal to make any economic proposals); *Continental Ins., Co. v. NLRB*, 495

7

F.2d 44, 48-50 (2nd Cir. 1974) (submitting regressive proposals, unilaterally transferred employees, unilaterally increased pay, and demanded the union agree to not organize other employees); *NLRB v. Holmes Tuttle Broadway Ford, Inc.*, 465 F.2d 717, 718-19 (9th Cir. 1972) (employer refused to sign a contract after the union accepted all of its proposals and instead demanded a seven day contract); *Kayser-Roth Hosiery Co., Inc.*, 176 NLRB No. 139 (1969) (terminating the employment of employees that testified in NLRB hearings and proposing complete control over which disputes are arbitrable); *NLRB v. Reed &Prince Mfg. Co.*, 205 F.2d 131, 134-37 (1st Cir. 1953) (failing to provide rationale for proposals, delaying bargaining, and publicly blaming the Board for refusing to give wage increases).  Here, there are no allegations pertaining to the Post-Gazette's conduct away from the table.

3.     The Board's waiver argument is inconsistent with the record.

Realizing that *NLRB v. American National Insurance Company*, 343 U.S. 395 (1952), *Struthers Wells Corporation v. NLRB*, 721 F.2d 465 (3d Cir. 1983), and *10 Roads Express*, 372 NLRB No. 105 (July 14, 2023) create serious problems for the "less rights" theory, the Board asks this Court to look the other way and find those arguments were waived. In doing do, they offer no substantive response to the arguments arising under these cases.[4]

---

[4]     Notably, the Board refused to include the Post-Gazette's briefing, where the Company raised the relevant arguments, in the joint appendix to support its position.

In *New Concepts for Living, Incorporated v. NLRB*, 94 F.4th 272 (3d Cir. 2024), this Court addressed the precise argument raised by the Board and held that the "crucial question in a section 10(e) analysis is whether the Board received adequate notice of the basis for the objection." *Id.* at 282 (internal quotation omitted). In reaching its conclusion, this Court rejected the Board's argument that a party must lay out an argument *verbatim* to adequately preserve the issue or name a case precisely. *Id.* at 280-82; 281 n.2-3. Instead, the party need only provide sufficient language to put the Board on notice that it intends to challenge a finding. *See Id.* Here, a review of the record shows the falsity of the Board's argument:

| Post-Gazette Filing | Statement from the Post-Gazette |
| --- | --- |
| Post-Hearing Brief to the ALJ at p. 8 [APPX0016]. | "As discussed more fully infra, if General Counsel is arguing the alleged predictably unacceptable proposals are objectionable on their face, then her allegation is barred by Section 10(b)." |
| Post-Hearing Brief to the ALJ at p. 9 [APPX0017]. | "General Counsel appears to be alleging it was unlawful for Respondent to make proposals on certain mandatory subjects because General Counsel does not like them. Respondent is unaware of any Board precedent which allows General Counsel or the Board to place their fingers on the scales to influence the substantive terms of a CBA." |
| Reply Brief to the General Counsel's Answer to the Exceptions at p. 8 [APPX0231]. | "Counsel for the General counsel's contention Respondent engaged in bad faith bargaining because it sought unfettered discretion in its proposals is not only false but does not represent the legal standard for good faith bargaining." |
| Brief in Support of Exceptions at pp. | "Moreover, it has never been the law that proposals with any discretion are per se bad faith, as the ALJ's analysis |

It is for this reason that the Post-Gazette was forced to file a separate Appendix so that the briefing could be included in the record for this Court. [A0001-A0363].

9

| | |
|---|---|
| 11-12 [APPX0234-0235]. | appears to suggest.  (ALJD p. 26-27, lines 5-14).  In doing so, the ALJ patently judges the substance of Respondent's proposals, which is impermissible." |

As such, the Post-Gazette directly called into question the Board's findings that the Company's bargaining proposals, standing alone, violated the Act.

> ### 4. The Board attempt to demonstrate that the "less rights" theory does not conflict with *Endurance Environmental Solutions, LLC*, 373 NLRB No. 141 (2024) is weak.

The Board argues that *Endurance Environmental* is irrelevant to the instant matter, but fail to demonstrate why.  [ECF No. 52 at p. 50].  Contrary to the Board's argument, *Endurance Environmental* is relevant because it lays out exactly how an employer must go about obtaining the discretionary proposals the NLRB alleges are unlawful in the instant matter.  *See* 373 NLRB No. 141, at *24 ("As we have explained, nothing about the waiver standard disfavors management-rights provisions.  Instead, the waiver standard requires parties seeking to displace the statutory duty to bargain to do so clearly and unmistakably").  The Board cannot have it both ways – it can't tell a party how to obtain discretion through a proposal and then state that doing so violates the Act.[5]

---

[5]    The Board also asserts, without explanation, that *First National Maintenance Corporation v. NLRB*, 452 U.S. 666 (1981) and *H.K. Porter Company v. NLRB*, 397 U.S. 99 (1970) are irrelevant.  [ECF No. 52 at p. 49 n.12].  The assertion is flawed. *First National Maintenance* is relevant because guaranteed work hours would prohibit the Post-Gazette from utilizing its right under the case to transition to an "all-digital format."  *H.K. Porter* is relevant because it prohibits the Board from judging the Post-Gazette's proposals, which is precisely what it is doing in the

**B.     The Board's Impasse Theory is Contrary to the Law and the Facts.**

1.     <u>The Post-Gazette was prohibited from implementing discretionary proposals based on the law</u>.

The Board and Guild argue the parties were not at impasse because the proposals implemented by the Post-Gazette were "more favorable" than the Final Offer.  [ECF No. 52 at p. 27, n.5]; [ECF No. 53 at pp. 39; 41-42].  *McClatchy Newspapers, Incorporated v. NLRB*, 131 F.3d 1026 (D.C. Cir. 1997), however, makes clear that an employer is prohibited from implementing bargaining terms that contain discretionary elements.  As such, the Post-Gazette could not implement discretionary terms and appropriately carved them out of its implementation.

2.     <u>The parties did not "pause bargaining" – the Guild "picked up their ball and went home</u>."

The Board attempts to cast the Guild's March 22, 2020 letter to the Post-Gazette calling future bargaining "fruitless" and "worthless" as a mere agreement by the parties to "pause bargaining due to COVID-19." [ECF No. 52 at p. 12].  No reasonable fact-finder could reach this conclusion.[6]

---

instant matter based on its conclusion that the Company failed to offer "any meaningful economic concessions or benefits to the bargaining unit in exchange for the broad discretion that it proposed" – making the determination that the Post-Gazette's 8% wage increase wasn't good enough.  [ECF No. 52 at p. 44].

[6]     The Board appears to assert that the Post-Gazette had a duty to object to the Guild's termination of bargaining.  [*See* ECF No. 52 at pp. 12, 26].  This is not the law.  Under the Act, an employer must bargain upon request by a union.  See *Hood River Distillers, Inc.*, JD-74-21 at slip op. at 41, fn. 33 (ALJ Carter, December 10, 2021) (citing *Raytheon Network Centric Systems*, 365 NLRB 161, slip op. at 11-12,

In *New Concepts*, this Court noted that:

> The Supreme Court has clarified that 'a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.' And 'evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's.'

94 F.4th at 280 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 496 (1951)). Here, the Court has the benefit of this precise analysis because District Judge Cathy Bissoon had the ability to examine the email and the credibility of its author (Guild Attorney Pass) in a three-day hearing concerning the Guild's sister-unions (the Advertisers, Mailers, and Pressmen). In *Wilson for & o/b/o NLRB v. PG Publ'g Co., Inc.*, 2:24-CV-01166-CB, 2025 WL 509305, at *1 (W.D. Pa. Feb. 13, 2025), the district court rejected the Board's "bad faith" bargaining and impasse arguments, holding:

> the Court finds that [the Post-Gazette] consistently made overtures to bargain regarding the terms and conditions of employment. … In contrast, the Court finds that the bargaining units thwarted bargaining efforts again and again. Indeed, at one point, Mr. Pass – presumably

---

16-17, 20 (2017)("an employer also has a 'duty to engage in bargaining' . . . *upon the union's request* to bargain." [Italics in original]). The Act does not place an affirmative duty on an employer to demand bargaining continue. However, the Post-Gazette did object – it filed an unfair labor practice charge after receiving the letter. [JA0497].

> speaking on behalf of all the relevant unions – indicating
> that all bargaining would cease until COVID was over. …
> Mr. Pass somehow decided that the unions here would
> throw in the towel.  It is difficult to reconcile Petitioner's
> assertions of bad faith with Mr. Pass's wholesale
> bargaining roadblock.

*Id.* at *3.  Thus, the Board's argument that the letter was a mere mutual "pause" in

bargaining is inaccurate.

> 3.    The Post-Gazette did not meet in-person to discuss the Guild's
>        September 2019 counteroffer because the Guild refused to meet.

The Board argues that the Guild and Post-Gazette were not at a bargaining

impasse because the parties "still needed to bargain about the Union's September

2019 proposal."  [ECF No. 52 at p. 26].  The Board is correct that the Post-Gazette

did not bargain with the Guild *in-person* because the Guild refused to meet and sent

its March 22, 2020 letter terminating negotiations.  Instead, the Post-Gazette was

forced to provide a comprehensive position statement in response to the Guild's

September 2019 proposal, which the Guild simply ignored.  Letter writing was

simply the only way to communicate with the Guild.

> 4.    The Guild's July 20, 2020 letter did not break the bargaining
>        impasse because it contained no movement.

The Board argues that the Guild's July 20, 2020 letter in which it stated a

desire to "suggest changes" to the Post-Gazette's Final Offer was sufficient to break

(or prohibit) the impasse.  [ECF No. 52 at p. 28].  A closer look at the letter

demonstrates that the Guild did not offer to make any changes to its proposals:

4933-6529-2854.1 / 105601.1009

> We believe further negotiations would be fruitful if the Employer comes to the table with an open mind a willingness to discuss proposals that can be mutually agreed to.
>
> \*       \*       \*
>
> Nonetheless, we are ever hopeful the Employer will come to its senses, approach the table in an effort to be reasonable and come to some amicable agreement. We stand ready, willing and able to meet to go through our last proposal and your 'Final Offer' and make suggested changes in an attempt to reach mutual agreement.

[JA2492-JA2495]. There is no indication the Guild was willing to change its position. In fact, the letter only suggests that the Guild was prepared to tell the Post-Gazette how to change its Final Offer.[7] And finally, the letter stated the Guild would only meet if the Post-Gazette amended its Final Offer to the Guild's satisfaction. The July 20, 2020 letter specifically states, "Please advise if you are willing and able to meet in order to negotiate terms of a mutually agreeable compromise from your 'Final Offer.'" **[JA2499-JA2502]**

---

[7]     Interestingly, the Board acknowledges that the Guild "was not inclined to make additional concessions because it had made numerous concessions in prior years." [ECF No. 52 at pp. 7-8]. The Guild, like the Post-Gazette, was within its rights to stick to its proposals. Indeed, the Guild *never* deviated from its initial proposals. This situation highlights the Court's warning in *H.K. Porter*, that "agreement might in some cases be impossible, and it was *never intended* that the Government would in such cases step in, become a party to the negotiations and impose its own view of a desirable settlement." 397 U.S. at 103-04 (emphasis added). This is precisely what the Board is attempting to do here.

14

### C.     The Court Cannot Enforce the Portions of the Decision's Remedy that Exceed the Board's Authority.

The Board argues that the Court cannot examine its *Thryv* remedy because the Post-Gazette waived the argument. [ECF No. 52 at pp. 52-54]. At the outset, the Board's waiver argument is factually incorrect because the Post-Gazette challenged its proposed remedies dating back to its answer to the administrative complaint and through its Exceptions. [JA0192, 209; APPX0157-0274, 0296-0310]. However, the waiver issue is irrelevant as this Court has already ruled that the Board does not have the authority to issue a *Thryv* remedy. *See NLRB v. Starbucks Corp.*, No. 23-1953, ---F.4th---, 2024 WL 5231549 (3d Cir. Dec. 27, 2024). As such, the Court cannot enforce a remedy that exceeds the Board's authority.

## IV.    <u>CONCLUSION</u>

In their briefing, the Board and Guild attempt to walk back the Decision and assert that the bad faith bargaining finding was based on the "totality" of the Post-Gazette's bargaining conduct. That's simply not true. The "less rights" theory is based *solely* on the Post-Gazette's bargaining proposals and by relying on this theory, the Board does specifically what the Supreme Court and this Court have told the NLRB not to do. Likewise, the Board's impasse finding cannot survive an independent examination like that done by Judge Bissoon.

The Court should grant the Post-Gazette's Petition.

Respectfully submitted,

/s/ Brian M. Hentosz
Brian M. Hentosz (PA No. 317176)
Morgan S. Dull (PA No. 322712)
LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
PH: 412-201-7676 / 7657
FX: 412-291-1241
bhentosz@littler.com
mdull@littler.com

Attorneys for Petitioner
*PG Publishing, Inc. d/b/a Pittsburgh Post-Gazette*

Dated: April 18, 2025

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Brian M. Hentosz, counsel for Petitioner PG Publishing Co, Inc. d/b/a Pittsburgh Post-Gazette, certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit. I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Petitioner's Reply Brief is proportionately spaced and has a typeface of 14-point Times New Roman, contains 4,064 words (not counting those portions excluded from the word count by Rule 32(a)(7)(B)(iii)), and that the text of the electronic brief is identical to the text of the paper copies. I further certify, pursuant to Local Appellate Rule 31.1(c), that Windows Defender has been run on this Brief before filing and that no virus was detected.

Dated: April 18, 2025

/s/ Brian M. Hentosz
Brian M. Hentosz (PA No. 317176)
Morgan S. Dull (PA No. 322712)

Attorneys for Petitioner,
*PG Publishing, Inc. d/b/a Pittsburgh Post-Gazette*

## **CERTIFICATE OF SERVICE**

I, Brian M. Hentosz, counsel for Petitioner Pittsburgh Post-Gazette, certify that on April 18, 2025, I filed the foregoing Petitioner's Reply Brief via the Court's CM/ECF system, causing a Notice of Docket Activity to be served upon the following counsel of record who are registered CM/ECF Filing Users, along with a paper copy via Federal Express:

Joseph J. Pass
219 Fort Pitt Boulevard
Pittsburgh, PA 15222
jjp@jpilaw.com

Ruth E. Burdick
David Seid
Milakshmi V. Rajapakse
Meredith Jason
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
ruth.burdick@nlrb.gov
david.seid@nlrb.gov
milakshmi.rajapakse@nlrb.gov
meredith.jason@nlrb.gov

Pursuant to Local Appellate Rule 31.1(a), seven (7) identical copies of this Petitioner's Brief with Joint Appendix Volume I were sent to the Clerk of the Court via Federal Express:

Patricia S. Dodszuweit, Clerk
Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Dated: April 18, 2025                    */s/ Brian M. Hentosz*
                                                 Brian M. Hentosz
                                                 Morgan S. Dull
                                                 Attorneys for Petitioner,
                                                 *PG Publishing, Inc. d/b/a Pittsburgh*
                                                 *Post-Gazette*

4910-5060-2251.1 / 105601-1009

4933-6529-2854.1 / 105601.1009