## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **PG PUBLISHING CO., INC.** | ) | |
| **d/b/a PITTSBURGH POST-GAZETTE** | ) | **Nos.  24-2788** |
| | ) | **24-3057** |
| **Petitioner/Cross-Respondent** | ) | |
| | ) | **Board Case Nos.** |
| **v.** | ) | **06-CA-248017** |
| | ) | **06-CA-263791** |
| **NATIONAL LABOR RELATIONS BOARD** | ) | **06-CA-269346** |
| | ) | |
| **Respondent/Cross-Petitioner** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEWSPAPER GUILD OF PITTSBURGH/** | ) | |
| **CWA LOCAL 38061** | ) | |
| | ) | |
| **Intervenor** | ) | |

## EMERGENCY MOTION OF THE NATIONAL LABOR RELATIONS BOARD FOR ADJUDICATION IN CIVIL CONTEMPT AND FOR OTHER CIVIL RELIEF

To the Honorable, the Judges of the United States
  Court of Appeals for the Third Circuit:

The National Labor Relations Board ("Board" or "NLRB"), by its Deputy

Associate General Counsel, respectfully moves the Court to adjudge PG Publishing

Co., Inc. d/b/a Pittsburgh-Post Gazette ("the Company") in civil contempt for

failing and refusing to comply with an injunction issued by this Court almost three

months ago, on March 24, 2025.  As shown below, civil contempt sanctions are

warranted because the Company has failed to comply with the Court's time-

sensitive directive to rescind, on request of the Newspaper Guild of

Pittsburgh/CWA Local 38061 ("the Union"), the unilateral changes made to

bargaining-unit employees' health insurance in July 2020.

## I.     FACTUAL BACKGROUND

### A.     During 2020 Collective Bargaining, the Company Unilaterally Eliminates Its Union-Represented Employees' Healthcare and Institutes a New Healthcare Plan[1]

The Company publishes the Pittsburgh Post-Gazette, a print and electronic

newspaper.  The Union represents the Company's editorial-department employees

for purposes of collective bargaining.  The parties' most recent collective-

bargaining agreement expired on March 31, 2017.  Under that agreement,

bargaining-unit employees received health insurance through the Western

Pennsylvania Teamsters and Employers Welfare Fund ("the Fund").[2]

From the outset of negotiations over a successor collective-bargaining

agreement, the Company sought far-ranging control over employees' terms and

conditions of employment, including healthcare benefits.  Thus, the Company not

---

[1] The operative facts are fully discussed, with record citations, in the Board's December 20, 2024 Motion for Temporary Relief and its March 14, 2025 principal brief.

[2] The Fund's name has changed since the execution of the collective-bargaining agreement.  *See PG Publ'g Co.*, No. JD-41-24, 2024 WL 3355062, at *4 n.11 (2024) (noting change of name occurred around February 2022).  The Fund is now known as the Employment Partners Benefits Fund.  (Attachment A.)

only proposed to transition employees out of the Fund and into a company healthcare plan, it also maintained it should be able to change or terminate healthcare coverage at will.

In June 2020, with contract negotiations not yet concluded, the Company presented a "final offer" to the Union, in which it continued to seek unfettered discretion over matters such as healthcare benefits. Soon thereafter, the Company announced that it believed the parties were at a bargaining impasse. And on July 27, relying on the suggestion of an impasse—with which the Union vigorously disagreed—the Company implemented many of the terms of its final offer. As relevant here, the Company substituted its healthcare plan, which it could alter or discontinue at any time, for the employees' collectively bargained health insurance through the Fund.

### B.    The Board Finds the Unilateral Changes Unlawful and Orders the Company To Rescind Them Upon the Union's Request

Acting on unfair-labor-practice charges filed by the Union, the Board's Regional Director for Region 6 (Pittsburgh) issued a complaint alleging, among other things, that the Company's bargaining conduct violated the National Labor Relations Act. Following a hearing, a judge found merit in the allegations, and on review of the judge's findings, the Board agreed. The Board specifically found that the Company violated Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by failing to bargain in good faith with the aim

of reaching a collective-bargaining agreement with the Union, and by unilaterally implementing the terms of the Company's July 27 final offer at a time when the parties were not at a bargaining impasse. (A 51-52, 75.)[3] As a remedy, the Board ordered, *inter alia*, that the Company cease and desist from the unfair labor practices found, bargain with the Union on request, submit bargaining progress reports to the Board every 30 days, and "on request by the Union, rescind the unilateral changes to the unit employees' terms and conditions of employment implemented on about July 27, 2020." (A 52-53.)

### C.    The Board Seeks Injunctive Relief Pending Litigation Over the Order; the Court Grants the Injunction As to Healthcare Benefits and the Union Promptly Requests Rescission of the Healthcare-Related Unilateral Changes

After the Board's order issued in September 2024, the Company elected not to comply but instead to petition for review of the order in this Court. *See* 29 U.S.C. § 160(f). The Board cross-applied for enforcement and, in December 2024, filed a motion for injunctive relief pending the Court's final judgment in the case. *See* 29 U.S.C. § 160(e). In support of its motion, the Board explained that interim relief—including an order that the Company immediately rescind its unilateral changes and bargain with the Union for a contract—was necessary "[t]o preserve the Board's remedial authority" given that the Company's unfair labor practices

---

[3] "A" refers to the joint appendix filed by the Company.

have severely destabilized, and could ultimately obliterate, the bargaining unit.

(Mot. for Temporary Relief, p. 2.)

On March 24, 2025, after hearing oral argument on the Board's request for

injunctive relief, the Court issued an Order granting, in part, the requested relief.

The Court directed, in relevant part, that the Company bargain with the Union and

> [o]n request by the Union, rescind the changes in the terms and conditions of employment related to health insurance for its unit employees that were unilaterally implemented on about July 27, 2020.

(March 24, 2025 Order, ¶ (c).)[4]

On March 26, two days after the Court's Order issued, the Union requested

that the Company "rescind the changes" it made to health insurance on July 27,

2020, and return to the Fund health insurance previously in place.  (Attachment B).

### D.    The Company Petitions for Rehearing *En Banc* and Also Requests Clarification of the Order; the Court Denies Those Requests

Notwithstanding the Union's request, which triggered the Company's

obligation to "rescind the changes in the terms and conditions of employment

related to health insurance," the Company took no steps towards rescission.

Instead, it filed a petition for rehearing *en banc* and, concurrently, moved for

"clarification that the Court's Order allows the Company to continue the existing

---

[4] The Company's compliance with its bargaining obligation under the Order is not at issue at this time.  The parties met for an initial contract bargaining session pursuant to the Court's Order on June 5, 2025.

plan coverage for employees while negotiating for a replacement plan with the

[Union]." (Mot. for Clarification, p. 2.)

Meanwhile, in response to the Union's March 26 rescission request, the

Company told the Union it would only "bargain over the effects of the Court's

Order" to rescind its unilaterally implemented company health insurance.

(Attachment C.) On March 31, the Union informed the Company that "[t]here is

no 'effects bargaining' when a Court Order allows the union to request [that]

illegally implemented terms be removed." (Attachment D. p.2.) The Union stated

that an order to rescind a unilateral change requires a return to the conditions—

here, the health insurance—that existed prior to the unilateral change. (Attachment

D, p.1).

On April 29, the Court denied the Company's petition for rehearing *en banc*

without requesting a response from the Board. In the same order, the Court also

denied the Company's motion for clarification.

**E.  The Union Attempts To Facilitate Compliance With the Court's Order To Rescind the Unlawful Changes to Employees' Healthcare Benefits; the Company Nonetheless Fails and Refuses To Comply**

In the almost three months since the Court ordered the Company to rescind

its changes to the bargaining-unit employees' healthcare benefits, the Union has

taken actions that would assist the immediate return of unit employees to coverage

by the Fund, by securing necessary information from the Fund and sharing that

information with the Company.

For instance, on April 9, the Union informed the Company that the Fund needed a census of all current unit employees and stated that the unit members would remain covered by the Company's unilaterally implemented insurance until the Company reinstated the Fund. (Attachment E). Likewise, in the third week of April, the Union informed the Company that it had confirmed the Fund's ability to insure the unit employees and enclosed a copy of an explanatory letter from the Fund. (Attachments F, G, H.) Similarly, on April 30—a day after the Court denied the Company's petition for rehearing *en banc* and motion for clarification of the March 24 Order—the Union reiterated its request that the Company rescind the July 27, 2020 unilateral changes to employees' health insurance. (Attachments I, J.) On May 2, the Union followed up by sending two forms that the Company needed to execute to return unit employees to the Fund. (Attachment K.)

These efforts by the Union, however, were to no avail. The Company took no steps to rescind its changes and return employees to the Fund.

On May 2, the Board's Regional Director sent compliance letters to the Company, asking for documentary evidence that it had taken steps to rescind its unilateral changes to health insurance as required by the Court's March 24 Order. (Attachments L, M.) In a response dated May 9, the Company stated that, on May 5, it had asked the Fund for premium information based on deductibles of $2000

for a person and $4000 for a family.  (Attachment N, pp. 2, 21.)

The Regional Director then asked the Company to explain the basis for the deductible amounts it quoted to the Fund, given that—to the Regional Director's knowledge—the deductibles should be $850 for single coverage and $1,700 for family coverage.  (Attachment O.)  The Regional Director also expressed her understanding that the Fund needed three weeks to process enrollment forms and gave the Company until May 14 to provide copies of those forms and evidence showing that they had been submitted to the Fund.  (Attachment P.)

Notwithstanding these communications, the Company provided no evidence to the Regional Director to show it had attempted to re-enroll employees in the Fund.  Moreover, the Fund has independently confirmed that, to date, it has received no re-enrollment forms from the Company.  (Attachment A.)  In sum, nearly three months have passed since the Court's March 24 Order and the Company has taken no steps toward compliance with the requirement to rescind the unilateral changes to the bargaining-unit employees' health insurance.

## II.    ARGUMENT

### A.    This Court Should Enforce Its Order Through a Contempt Adjudication

#### 1.    The legal standard for civil contempt

A court has the inherent power to enforce compliance with its lawful orders through civil contempt.  *See Spallone v. United States*, 493 U.S. 265, 276 (1990);

*United States v. Harris*, 582 F.3d 512, 514 (3d Cir. 2009); *United States v. Ciampitti*, 669 F.Supp. 684, 687 (D.N.J. 1987). Indeed, "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 796 (1987).

To establish civil contempt, a movant must demonstrate by clear and convincing evidence: "that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) that the defendant disobeyed the order." *See Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)). If "there is ground to doubt the wrongfulness of the [defendant's] conduct," the court should not issue a civil contempt adjudication. *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)). However, "good faith is not a defense to civil contempt," and defendants will not be spared such an adjudication simply because they did not willfully violate the court order. *Id*.

Here, the Board is seeking the imposition of civil contempt sanctions to "coerce the [Company] into compliance with the court's order, and to compensate

the [Board] for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947).

> **2.    The Company is in contempt of the Court's Order requiring it to rescind the unilaterally imposed company health insurance**
>
> **a.    This Court's Order is valid and has been in full force and effect at all material times**

The Court's Order was authorized by Section 10(e) of the Act which empowers the Board "to petition [a] court of appeals of the United States . . . for the enforcement of [its] order and for appropriate temporary relief or restraining order," and enshrines the Court's "power to grant such temporary relief or restraining order as it deems just and proper."  29 U.S.C. § 160(e).  Here, the Court acted well within this statutory grant of authority by ordering the Company to rescind its unilateral changes to employees' healthcare benefits, upon request.  *See Ahearn v. Remington Lodging & Hospitality*, 842 F. Supp 1186, 1207 (9th Cir. 2012) (order of injunctive relief requiring employer to, at the union's request, rescind institution of a new medical insurance plan and reinstate the medical insurance plan provided for in the expired collective-bargaining agreement).

Importantly, although the Company previously asked the Court to reconsider its decision to issue the Order, or to clarify that the Order only requires the Company to bargain over the "effects" of its unilateral changes, the Court denied those requests.  Thus, the Order to "rescind the changes in the terms and conditions

of employment related to health insurance for its unit employees that were unilaterally implemented on about July 27, 2020" has been in full force and effect at all times.

### b.     The Company has knowledge of the Order

There is no dispute that the Company has knowledge of the Court's Order. In its March 27 motion for clarification, the Company acknowledged the specific terms of the Court's directive to rescind the unilateral changes to employees' health insurance.  (Mot. for Clarification, pp. 1-2.)  Moreover, the Company's plea for leave to bargain with the Union over a replacement healthcare plan (Mot. for Clarification, pp. 2-3) conveyed its understanding of the obvious:  absent "clarification," the Order would require it to reinstate the bargaining-unit employees' previous healthcare plan when it rescinded the unilaterally implemented company plan.  (Mot. for Clarification, p. 2.)

In addition, on two occasions, March 26 and April 30, the Union specifically requested that the Company rescind its unilaterally imposed company health insurance and return to the Fund.  Likewise, in letters dated May 2, May 12, and May 13, the Region gave the Company ample notice of its court-ordered obligation to undo the unilaterally implemented company health insurance and return unit employees to the pre-existing Fund health insurance.

### c.    The Company has violated the Court's Order

The evidence here clearly establishes that the Company has violated the Court's Order.  The Company has all of the information and forms it needs to rescind its July 2020 removal of employees from the Fund, as required by the Court's Order.  Yet, the Company has failed and refused to do so.  Thus, it has resisted the Union's efforts beginning on March 26 to secure compliance with the Court's Order.  And it has ignored the requests of the Board's Regional Director to provide proof that it has re-enrolled bargaining-unit employees in the Fund.  To the extent that the Company has withheld compliance based on questions about applicable deductibles or other details attendant to returning employees to the Fund, the Company has failed to make any such bases clear—in writing to the Regional Director, the Union, or the Fund—betraying its lack of seriousness about complying with the Court's Order.

In sum, by failing to fully comply with this Court's Order issued almost three months ago, the Company has thumbed its nose at the Order and the authority of this Court.  Such conduct does not come close to the good faith and reasonable effort that is required to avoid an adjudication of civil contempt.  *United States v. Ryan*, 402 U.S. 530, 533 (1971).  Therefore, the Court should find the Company in civil contempt of the Order.

**B.     Appropriate Remedies**

The Court has "broad discretion to fashion an appropriate civil contempt remedy" for a party's failure to honor an order of the Court. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) (citing *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1150, 1158 (3d Cir. 1982)). Civil contempt sanctions serve, among other things, to coerce compliance with a court order or to compensate a party for losses sustained from another party's failure to comply with a court order. *See Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994); *McDonald's Corp v. Victory Inv.*, 727 F.2d 82, 87 (3d Cir. 1984). To these ends, a court may impose various sanctions, among them: fines, reimbursement of costs to the complainant, and coercive incarceration. *See Ne. Women's Ctr., Inc.*, 939 F.2d at 70.

When sanctions are intended to ensure future compliance with the order at issue, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the results." *United Mine Workers*, 330 U.S. at 304. Given the circumstances here, where the Company has ignored the explicit directive of the Court's order of interim injunctive relief—without due regard to its time-sensitive nature, without any explanation, and for a period of months—the Board requests that the Company be adjudged in civil contempt and that the Court impose certain

specified sanctions to coerce prompt future compliance and remedy past noncompliance.

### 1.    Certification of compliance

The Board requests that the Court order the Company to comply with the Court's March 24 Order and, within fourteen (14) days of entry of the contempt order, file a certification on the Court's docket, signed by an appropriate representative on behalf of the Company, attesting to all steps taken to comply with the March 24 Order and naming the company officials responsible for effectuating compliance.

### 2.    Prospective fines

Civil contempt sanctions are called for in this case, to compel the Company's compliance with the Court's March 24 Order and to prevent the Company from undermining the Court's grant of injunctive relief by impermissibly giving continued force to unilateral changes that the Court clearly sought to have undone upon the Union's request.  The Court should set forth the penalty to be assessed if the Company continues to refuse to obey the Order following a reasonable time after this adjudication issues.  *See McDonald's Corp.*, 727 F.2d at 87.

The Board requests that the Court impose prospective fines for the Company's ongoing contumacious conduct starting on the fourteenth (14th) day

following issuance of the contempt order.  Should the Company fail to comply

within fourteen (14) days following the contempt order, the Board requests that the

Court impose a fine of $20,000 (or any other amount the Court deems necessary),

and a further fine of $1,000 per day for each day the Company fails to comply.

### 3.    Attorneys' fees and costs

The Company's refusal to fully comply with the Court's Order has forced

the Board and the Union to litigate a matter that should have been resolved months

ago, yet remains outstanding, solely due to the Company's obstinacy.  The Court

may issue sanctions that compensate the Board and Union for their losses.  *See*

*Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992).  Accordingly, attorneys' fees and

costs are within the Court's discretion and are appropriate to compensate the Board

and the Union for expenses reasonably and necessarily incurred in their attempt to

enforce compliance with the Court's Order.  *See Robin Woods, Inc.*, 28 F.3d at 400

("the cost of bringing the violation to the attention of the court is part of the

damages suffered by the prevailing party").

The Board requests that the Court order the Company to pay to the NLRB

and the Union all costs, expenses, and reasonable attorneys' fees incurred in

connection with this motion.  For the NLRB, such costs, expenses, and fees shall

be calculated at the prevailing market rate in Washington, D.C., and, unless agreed

to by the parties, shall be fixed by further order of the Court upon submission by

the NLRB of a certified statement of such costs, expenses, and fees.  Should any

dispute arise respecting the NLRB's submission, as to which the Court may

determine that a hearing is desirable, the Court, in its discretion, may refer such

dispute to a special master, upon such terms as the Court shall determine, for a

report and recommendation.

## III.    CONCLUSION

The time for full compliance with the Court's March 24 Order is long past,

and in the meantime the bargaining-unit employees bear the weight of the

Company's ongoing disobedience.  The Court should grant this Emergency Motion

and adjudicate the Company in civil contempt for its continued noncompliance and

issue an order directing the Company to take appropriate actions to purge itself of

contempt.

WHEREFORE, the Board requests that its Emergency Motion be granted.

A proposed order is submitted herewith (Attachment Q).


/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, D.C.  20570


Dated at Washington, D.C.
this 17th day of June 2025

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| PG PUBLISHING CO., INC. | ) | |
| d/b/a PITTSBURGH POST-GAZETTE | ) | Nos. 24-2788 |
| | ) | 24-3057 |
| Petitioner/Cross-Respondent | ) | |
| | ) | Board Case Nos. |
| v. | ) | 06-CA-248017 |
| | ) | 06-CA-263791 |
| NATIONAL LABOR RELATIONS BOARD | ) | 06-CA-269346 |
| | ) | |
| Respondent/Cross-Petitioner | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEWSPAPER GUILD OF PITTSBURGH/ | ) | |
| CWA LOCAL 38061 | ) | |
| | ) | |
| Intervenor | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), the Board certifies that its motion contains 3,581 words of proportionally spaced, 14-point type, and the word processing system used was Microsoft Word for Office 365, and the PDF file submitted to the Court has been scanned for viruses using Microsoft Defender and is virus-free according to that program.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, DC  20570-0001
(202) 273-2960

Dated at Washington, DC
this 17th day of June 2025

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **PG PUBLISHING CO., INC.** | ) | |
| **d/b/a PITTSBURGH POST-GAZETTE** | ) | **Nos.  24-2788** |
| | ) | **24-3057** |
| **Petitioner/Cross-Respondent** | ) | |
| | ) | **Board Case Nos.** |
| **v.** | ) | **06-CA-248017** |
| | ) | **06-CA-263791** |
| **NATIONAL LABOR RELATIONS BOARD** | ) | **06-CA-269346** |
| | ) | |
| **Respondent/Cross-Petitioner** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEWSPAPER GUILD OF PITTSBURGH/** | ) | |
| **CWA LOCAL 38061** | ) | |
| | ) | |
| **Intervenor** | ) | |

## CERTIFICATE OF SERVICE

I certify that on June 17, 2025, the foregoing motion was filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit, and that all counsel are registered CM/ECF users.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, DC  20570-0001
(202) 273-2960

Dated at Washington, DC
this 17th day of June 2025

# ATTACHMENT A

Employment Partners Benefits Fund Letter dated 6/12/2025



LOGAN, METTLEY & NEWCOMER, PLC

Levi K. Logan
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203
lkl@lmnlawgroup.com
(412) 417-5506

June 12, 2025

Nancy Wilson
Regional Director, Region 6
National Labor Relations Board
William S. Moorhead Federal Bldg, Rm 904
1000 Liberty Avenue
Pittsburgh, PA 15222
Via email to: Nancy.wilson@nlrb.gov

RE:    Employment Partners Benefits Fund – PG Publishing, 06-CA-248017

Dear Nancy:

I am writing this letter in my capacity as fund counsel for the Employment Partners Benefits Fund (the "Fund"). I have served as fund counsel to the Fund since January 1, 2025. This letter will confirm the conversations we have had regarding the coverage provided by the Post-Gazette (the "Employer") through the Fund for the Employer's covered employees who are members of the Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union").

In terms of what is needed to enroll the Union members in the Fund, this information was sent out on May 2, 2025. The Fund needs each member's name, address, social security number and date of birth. The same information is required for any beneficiary to be covered. I have enclosed the Highmark application that is used to collect this information. Also enclosed is the Employer Update Sheet with basic contact and payment information needed from the Employer.

With regards to any Participation Agreement between the Fund and the Employer, the Fund has not asked the Employer to enter into a Participation Agreement. The Fund's position is that the Collective Bargaining Agreement (the "CBA") between the Union and Employer, which required the Employer to provide contributions to the Fund for coverage of the Union members, is still valid until a new CBA is reached. There is no other agreement that needs to be implemented between the Employer and the Fund as a prerequisite for the Fund providing coverage to the Union members.

As of this date, the Employer has not provided any of the necessary information for the Union members to allow the Fund to enroll the members in coverage. I have received several letters from the Employer's attorney regarding the Employer's claims that they have no contribution obligation to the Fund and arguing about the deductibles for the coverage, but nothing has been done regarding the enrollment information needed by the Fund.

**MOTION ATTACHMENT A**

Nancy Wilson
June 12, 2025
P a g e | **2**

Once the Fund receives the necessary enrollment information, it will take roughly three (3) weeks to complete the enrollment process. The Employer was initially given a deadline of May 9, 2025 to have coverage effective June 1, 2025. At this point, the Fund would need the enrollment information by July 10, 2025 for coverage to be in place on August 1, 2025.

If you have any questions, please feel free to contact me directly.

Sincerely,

Levi K. Logan

cc:    William Parry, Jr. (via email)

Signature _____    Date: __6__ / __12__ / __2025__
    (Sign in Presence of Notary Public)

State of: __Pennsylvania__. County of: __Allegheny__. On __June 12__, 20__25__, the above-named person appeared before me and acknowledged that he or she signed this Letter for the reasons set forth herein.

Notary Public: __Ashley Fletcher__    [SEAL]:

Commission Expires: __March 26, 2028__

Commonwealth of Pennsylvania - Notary Seal
Ashley L. Fletcher, Notary Public
Allegheny County
My commission expires March 26, 2028
Commission number 1440429
Member, Pennsylvania Association of Notaries

# *EMPLOYMENT PARTNERS BENEFITS FUND*

**50 Abele Rd., Ste. 1005 Bridgeville, PA 15017**
Telephone: 1-412-363-2700 ◆ Toll Free: 1-800-242-0410 ◆ Fax: 1-412-363-0580
Website: www.epbfund.com

---

Dear Employer:

Please update your company information below and return with your payment.

Company Name: _____

Contact Name: _____

Contact Number: _____

Contact Fax: _____

Contact Email: _____

**Would you like your monthly invoice emailed?** ☐ Yes ☐ No

**Would you like information for ACH payments?** ☐ Yes ☐ No

HEALTH INSURANCE ENROLLMENT APPLICATION

**EMPLOYEE INFORMATION**

Employer Name

Employee First Name/Middle Initial/Last Name

Social Security Number

Street Address

City

State

Zip

Employee Phone #

(   )

Employee Hire Date

| Month | Day | Year |
|-------|-----|------|
|       |     |      |

FOR OFFICE USE ONLY

| Group Number | PayLoc | Effective Date |
|--------------|--------|----------------|
|              |        |                |

| Complete Where Applicable | First Name / Middle Initial / Last Name | Social Security Number | Birthday Mo Dy Yr | Sex |
|---|---|---|---|---|
| Self |  |  |  |  |
| Spouse |  |  |  |  |
| Child |  |  |  |  |
| Child |  |  |  |  |
| Child |  |  |  |  |
| Child |  |  |  |  |

_____
Employee Signature

_____
Date

# ATTACHMENT B

Union Letter to PPG dated 3/26/2025



**JUBELIRER, PASS & INTRIERI, P.C.**
*Attorneys at Law*

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder Buisch**

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

\* also admitted in Ohio
\*\* also admitted in Wisconsin

*of counsel*
Joseph M. Burns***
\*\*\* licensed in Illinois

jjp@jpilaw.com

March 26, 2025

**VIA EMAIL & USPS**
rlowe@kingballow.com

Richard Lowe
King & Ballow
26 Century Blvd, Suite NT 700
Nashville, Tennessee 37214

Re: Pittsburgh Post-Gazette 10(e) Injunction

Dear Richard:

Pursuant to the Third Circuit's Order dated March 24, 2025, the News Guild formally requests that the Post-Gazette rescind the changes in the terms and conditions of employment related to health insurance for the News Guild's bargaining unit that were unilaterally implemented on or about July 27, 2020, and restore the healthcare provisions set forth in the 2014-2017 contract as interpreted by Arbitrator Nadelbach in his 2019 decision and affirmed by the Third Circuit. *PG Publ'g Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308 (3d Cir. 2021). The Union requests that the applicable terms of the 2014-2017 contract be restored no later than April 1, 2025.

Although you have refused to utilize the services of the FMCS previously, the Union strongly suggests reconsidering. In light of the difficulties we have experienced in reaching a new agreement, employing the assistance of a professional mediator, provided without cost by the FMCS, would be very beneficial.

Please advise if you are agreeable to using FMCS, in which event we will contact them for available dates so that we can move forward in reaching an agreement between the parties.

We look forward to productive negotiations where the Post-Gazette complies with the Third Circuit's Order and bargains in good faith with the Union. We believe it would be very beneficial in facilitating bargaining if, prior to our next meeting, you could kindly share with us

**MOTION ATTACHMENT B**

an electronic copy of an updated proposal from the Post-Gazette, with clearly marked red-line changes.

Sincerely,

Joseph J. Pass, Esq.



# ATTACHMENT C

PPG Letter to Union dated 3/28/2025

KING & BALLOW

LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456

FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

March 28, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA  15222

      Re:    Effects Bargaining with Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Joe:

As you are aware, yesterday the Post-Gazette filed a Motion for Clarification of the Order Granting Injunctive Relief in Part. The Company is ready to negotiate over the effects of the Court's Order to "rescind the changes in the terms and conditions of employment related to healthcare."

The Company is available next week, beginning Thursday, April 3, 2025 to bargain over the effects of the Court's Order on healthcare.

Please let me know if that works for the Union and I will secure a meeting room at the Omni.

Sincerely,

Richard C. Lowe

cc:    Rob Weber

**MOTION ATTACHMENT C**

# ATTACHMENT D

Union Letter to PPG dated 3/31/2025




## JUBELIRER, PASS & INTRIERI, P.C.
### Attorneys-at-Law

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

March 31, 2025

**VIA EMAIL**
**AND FIRST CLASS MAIL**
Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:    Newspaper Guild of Pittsburgh and Post-Gazette

Dear Richard:

I received your correspondence of March 28, 2025, as well as your correspondence seeking the Guild's consent to engage in discussions pursuant to Rule 408. As to your request to negotiate pursuant to Rule 408, the production units were in a far different position than the News Guild. For the past eight (8) years you have been telling them the Post-Gazette was going to be a strictly digital newspaper, and subsequently the Post-Gazette sold its "printing press." A buyout to those unions was an alternative to bargaining for a contract when there would no longer be any print editions.

The News Guild on the other hand is in a far different position. The Newspaper Guild of Pittsburgh are journalists and love being journalists. Obviously, the Post-Gazette going to a digital newspaper has absolutely no impact on journalists except for the fact the Post-Gazette would most likely need more journalists. Therefore, the News Guild has no interest in selling the jobs of its members. Your request to bargain pursuant to Rule 408 is respectfully rejected.

As for your letter of March 28, 2025, wherein you request the Guild engage in "effects bargaining" you obviously suffer a misconception of the historically accepted standard that when an employer's illegally implemented terms are rescinded the employer restores the conditions that existed prior to their illegal implementation. Under your convoluted theory the PGs illegal activity is rewarded if the union requests the employer rescind the illegally imposed healthcare. Under your theory, considering the Post-Gazette's history of bad faith bargaining a new healthcare agreement may take years: In the meantime, the Post-Gazette will continue its bad faith bargaining and gain leverage when the illegally implemented healthcare is removed leaving the employees without any healthcare.

**MOTION ATTACHMENT D**

The Motion for clarification which the PG filed is nothing more than another delay tactic- a tactic the Post-Gazette has engaged in for the past eight (8) years. We shall be filing a Response to that Motion and seeking sanctions. Once the healthcare contained in the recently expired agreement is reinstated we can begin bargaining for the terms and conditions of a new Agreement.

There is no "effects bargaining" when a Court Order allows the union to request illegally implemented terms be removed, because the expired agreement is put in its place. We urge the company to move forward as quickly as possible to reinstate the healthcare program set forth in the expired Collective Bargaining Agreement as interpreted by Arbitrator Nadelbach and enforced by the US Court of Appeals for the Third Circuit so that the PG can move forward with its obligation to engage in good faith bargaining for a new Collective Bargaining Agreement. If you have any questions please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc:    Zack Tanner

# ATTACHMENT E

Union Letter to PPG dated 4/9/2025



# JUBELIRER, PASS & INTRIERI, P.C.
### Attorneys-at-Law

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

April 9, 2025

*also licensed in Ohio

**VIA EMAIL
AND FIRST CLASS MAIL**
Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:   Pittsburgh Post-Gazette and Pittsburgh News Guild

Dear Richard:

As you are aware the Third Circuit entered an Order requiring the Post-Gazette, upon request of the union, rescind its illegal unilateral implemented healthcare. As a result, I forwarded you a letter requesting the Post-Gazette rescind the unilaterally imposed healthcare, and the healthcare provided by the Employment Partners Benefits Fund as set forth in exhibit B of the parties expired Agreement be reinstituted.

I had the opportunity to speak with William Parry, the executive director of the Fund and he assured me that the healthcare can be reinstituted. However, the Fund is in need of a census of all the employees in the bargaining unit be provided so that an appropriate premium for these individuals is established. Therefore, it is incumbent that you immediately provide Mr. Parry with a census of all current employees under the Guild's jurisdiction who are actively employed at the Post-Gazette as well as those individuals on strike be included in the census. It is incumbent that the information be provided to Mr. Parry as soon as possible so that the healthcare can be implemented consistent with the Order of the U.S. Court of Appeals for the Third Circuit.

In the meantime, employees actively employed will remain covered by the inferior benefits unilaterally implemented until the benefits set forth in the Collective Bargaining Agreement which are provided by the Employment Partners Benefits Fund are reinstituted. When the Post-Gazette provides the census information to the Employment Benefits Partners Fund please copy the undersigned so we are aware that the information is being transmitted.

Finally, as you are aware the fact that the Post-Gazette filed a "Motion for Clarification" does not operate as an automatic stay of the Court's Order. Although the PG requests for an en

**MOTION ATTACHMENT E**





banc hearing does stay the Court's Order we expect during the time the Third Circuit determines your motion, all of the necessary information will be provided to the Employment Benefits Partners Fund. As a result, the health insurance provided by the Employment Benefits Partners Fund will be in place upon the decision of the Third Circuit denying your application for an en banc hearing. Failure of the Post-Gazette to abide by the command of the Third Circuit will be dealt with accordingly.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc: William Parry

# ATTACHMENT F

Union Letter to PPG dated 4/24/2025



**JUBELIRER, PASS & INTRIERI, P.C.**
*Attorneys-at-Law*

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

April 24, 2025

*also licensed in Ohio

### VIA EMAIL AND FIRST CLASS MAIL

Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Brian M. Hentosz, Esquire
Littler Mendelson P.C.
One PPG Place
Suite 2400
Pittsburgh, PA 15222

Re:    Guild Health Insurance

Dear Gentlemen:

I have confirmed with William Parry the Director of the Employment Partners Benefits Fund that the Post-Gazette's health insurance program as set forth in the most recently expired agreement between the Post-Gazette and the News Guild, is available to the Post-Gazette so long as the appropriate premiums are paid by the Post-Gazette. The Guild has obtained the names and ages of each of the employees currently under the jurisdiction of the News Guild and employed by the Pittsburgh Post-Gazette including the scabs and those employees who are on strike. I had forwarded that information to Mr. Parry and asked that he provide the cost in order to maintain that coverage. I would suggest if you have any questions you should call Mr. Parry in order to confirm that the insurance program is available and what the appropriate cost will be.

Your filings with the Third Circuit indicating you are unsure as to whether the insurance provider would reinstate that coverage was and continues to be a misstatement of the facts. All you needed to do was contact the Fund, just as we did, and find out indeed they are ready, willing and able to reinstate the insurance that was in effect in the expired agreement between the Post-Gazette and the News Guild so long as the Post-Gazette pays the appropriate premiums. If you have any doubts please feel free to call Mr. Parry and he will confirm. I also urge you to advise the Third Circuit that you are aware that the Employment Partners Benefits Fund is willing to reinstate the healthcare that was in existence under the expired agreement.

If you have any further questions, please feel free to contact me.

Very truly yours,

Joseph J. Pass

JJP/ac
cc:    William Parry
        Zack Tanner



219 Fort Pitt Boulevard 1ˢᵗ Floor, Pittsburgh, PA 15222-1576 Ph: 412.281.3850 • 412.261.0147 F: 412.281.1985
facebook.com/jpilaw www.jpilaw.com



**MOTION ATTACHMENT F**

# ATTACHMENT G

Union Letter to PPG dated 4/25/2025

Case: 24-3057    Document: 75    Page: 38    Date Filed: 06/17/2025

## JUBELIRER, PASS & INTRIERI, P.C.
### Attorneys-at-Law

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass'
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

'also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

April 25, 2025

### VIA EMAIL AND FIRST CLASS MAIL

Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Brian M. Hentosz, Esquire
Littler Mendelson P.C.
One PPG Place
Suite 2400
Pittsburgh, PA 15222

Re:     Guild Health Insurance

Dear Gentlemen:

The attached letter dated April 24, 2025, from the attorney representing the Employment Partners Benefits Fund confirms the Fund has no problem putting the Guild bargaining unit back into the Health and Welfare Fund and will provide the same coverage that was in place in 2017. Surely this letter should allay any of the fears or arguments you may have that the Fund would not be able to provide the same benefits. In my email to you yesterday I urged you as an officer of the Court to advise the Third Circuit that your previous filings indicating great doubt that the Employment Partners Benefit Fund would refuse to provide the same healthcare to the Guild's members with the same benefits that existed in 2017 was unfounded. Hopefully you will do so.

If you have any questions, please do not hesitate to contact me,

Very truly yours,

Joseph J. Pass

JJP/ac

cc:     William Parry
        Zack Tanner


219 Fort Pitt Boulevard 1' Floor, Pittsburgh, PA 15222 15'6 Ph: 412.281.3850 • 412.261.0147 F: 412.281.1985
facebook.com/jpilaw  www.jpilaw.com


**MOTION ATTACHMENT G**

# ATTACHMENT H

Employment Partners Benefit Fund Letter dated 4/24/2025



LOGAN, METTLEY & NEWCOMER, PLC

Levi K. Logan
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203
lkl@lmnlawgroup.com
(412) 417-5506

April 24, 2025

Joseph J. Pass
Jubelirer, Pass & Intrieri, P.C.
219 Fort Pitt Boulevard, 1st Floor
Pittsburgh, PA 15222-1576
Via email to: jjp@jpilaw.com

RE:    Employment Partners Benefits Fund (the "Fund") – Newspaper Guild of Pittsburgh/CWA
Local 38061 (the "Union")

Dear Attorney Pass:

I wanted to confirm that the letter you sent to the Post-Gazette's attorneys is for the most part
accurate. I can confirm that the Fund would accept the Union members and provide health
insurance coverage for those members. Our understanding is that the Court Order addressing the
Post-Gazette's provision of insurance coverage for the Union's members requires coverage to be
provided at the same level as what was in place in 2017. When these members left the Fund, the
Post-Gazette was the only employer in the plan provided by the Fund at that time. Consequently,
the Fund terminated that specific plan. However, the Fund will create the same plan for these
incoming Union members as was in place when they left the Fund. This plan will provide coverage
which will be the same as what was in place in 2017.

The Post-Gazette will be obligated to pay the current rates for coverage set by the Fund's Trustees,
just as any other contributing employer would. If the Post-Gazette refuses to pay current rates, as
they have tried to avoid in the past, the Fund will not provide coverage to the Post-Gazette's Union
employees. The Post-Gazette will need to enter into an agreement with the fund, just as all other
contributing employers are required to, obligating the Post-Gazette to submit contributions to the
Fund at the rates set by the Trustees for the level of coverage provided to the Post-Gazette's Union
employees.

If you have any questions, please feel free to contact me directly.

Sincerely,

*Levi K. Logan*

Levi K. Logan

cc:    William Parry, Jr. (via email)

**MOTION ATTACHMENT H**

# ATTACHMENT I

Union Letter to Lowe/PPG dated 4/30/2025





## JUBELIRER, PASS & INTRIERI, P.C.
### Attorneys-at-Law

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

April 30, 2025

**VIA EMAIL**
**AND FIRST CLASS MAIL**
Richard Lowe
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:     Your Letter of April 28, 2025

Dear Richard:

As you are keenly aware the Court of Appeals has rejected the Post-Gazette's Motion for Clarification and the request for an En Banc hearing. As a result, there is absolutely no question that once the illegally imposed healthcare is rescinded the actual healthcare benefits as set forth in the expired Collective Bargaining Agreement is what goes in its place. Your argument that the Employer Partners Benefits Fund had terminated that plan is of no consequence because as noted they can and will recreate the plan with identical benefits that existed under that plan. Further your argument that the Post-Gazette was never obligated to sign a participation agreement or any other type of agreement is of no consequence. The Third Circuit Order is very clear. What you had done before has absolutely no impact on your compliance with the Court's Order. Finally, your observation that an Administrative Law Judge found the company was not required to sign a participation agreement dealt not only with a different fund but with a different union. As you have emphasized many times there is no coordinated bargaining and the cases you cite had nothing to do with the Guild and the Post-Gazette. Moreover, the US Court of Appeals has significantly more authority to compel enforcement than the "recommendations of an ALJ."

Very truly yours,

Joseph J. Pass

JJP/ae

Enclosure via email only
cc:     Nancy Wilson
        Jason Scherer
        Brian Hentosz
        David Seid
        Zack Tanner

219 Fort Pitt Boulevard 1st Floor, Pittsburgh, PA 15222-1576  Ph: 412.281.3850 • 412.261.0147  F: 412.281.1985
facebook.com/jpilaw  www.jpilaw.com





**MOTION ATTACHMENT I**

# ATTACHMENT J

Union Letter to Lowe & Hentosz/PPG dated 4/30/2025

# JUBELIRER, PASS & INTRIERI, P.C.
### *Attorneys-at-Law*

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

April 30, 2025

## VIA EMAIL AND FIRST CLASS MAIL

Brian M. Hentosz, Esquire
Littler Mendelson P.C.
One PPG Place
Suite 2400
Pittsburgh, PA 15222

Richard Lowe, Esquire
King & Ballow
26 Century Boulevard
Nashville, TN 37214

Re:    Post Gazette Guild Pittsburgh Newspaper Guild

Dear Brian and Richard:

Attached hereto is Richard Lowe's, letter of April 28, 2025. Obviously, there is no "effects bargaining" as the US Court of Appeals for the Third Circuit has summarily denied the PG's Motion for Reconsideration as well as its Motion for an En Banc hearing. The Motion for Clarification argued that effects bargaining is necessary as a result of the union's request that the illegally imposed healthcare be rescinded. The Motion also argued that it was unlikely that the Employment Partners Benefits Fund would accept the Guilds bargaining unit back into the Fund. On the other hand, the NLRB as well as the Guild argued that the proper procedure was that once the union requested that the Post-Gazette rescind the illegally imposed healthcare program the healthcare that was in existence prior to July 27, 2020, would be the healthcare benefits the employees were entitled to. The Post-Gazette's argument that the Fund was not likely to accept the Post-Gazette/News Guild back into the Fund is clearly inconsistent with the communications which we provided to Mr. Lowe and which I am enclosing herein.

Consistent with the Order of the US Court of Appeals the News Guild requests that the Post-Gazette provide all necessary information to the Employment Partners Benefits Fund no later than May 7, 2025. Within five (5) days from the Fund receiving the necessary information the union will suggest several dates for the parties to resume contract negotiations. If you have any questions as to what information is needed, please check with the Employment Partners Benefits Fund or Mr. Logan the Fund's counsel who is copied on this letter.

Please confirm to the undersigned when the Post-Gazette provides the Employment Partners Benefit Fund the information needed in order to provide coverage so that the union is aware that action is being taken to enroll all affected in the Employer Partners Benefits Fund. That

**MOTION ATTACHMENT J**



Brian Hentosz, Esquire
Richard Lowe, Esquire
April 30, 2025
page 2

notice will also trigger the union's promise to provide bargaining dates to resume negotiations for a new Collective Bargaining Agreement.

        If you have any questions, please do not hesitate to contact me.

                        Very truly yours,

                        Joseph J. Pass

JJP/ae

cc:    William Parry
       Zack Tanner
       Jason Scherer
       David Seid, Esquire
       Nancy Wilson
       Levi Logan, Esquire



LOGAN, METTLEY & NEWCOMER, PLC

Levi K. Logan
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203
lkl@lmnlawgroup.com
(412) 417-5506

April 24, 2025

Joseph J. Pass
Jubelirer, Pass & Intrieri, P.C.
219 Fort Pitt Boulevard, 1st Floor
Pittsburgh, PA 15222-1576
Via email to: jjp@jpilaw.com

RE:    Employment Partners Benefits Fund (the "Fund") – Newspaper Guild of Pittsburgh/CWA
       Local 38061 (the "Union")

Dear Attorney Pass:

I wanted to confirm that the letter you sent to the Post-Gazette's attorneys is for the most part accurate. I can confirm that the Fund would accept the Union members and provide health insurance coverage for those members. Our understanding is that the Court Order addressing the Post-Gazette's provision of insurance coverage for the Union's members requires coverage to be provided at the same level as what was in place in 2017. When these members left the Fund, the Post-Gazette was the only employer in the plan provided by the Fund at that time. Consequently, the Fund terminated that specific plan. However, the Fund will create the same plan for these incoming Union members as was in place when they left the Fund. This plan will provide coverage which will be the same as what was in place in 2017.

The Post-Gazette will be obligated to pay the current rates for coverage set by the Fund's Trustees, just as any other contributing employer would. If the Post-Gazette refuses to pay current rates, as they have tried to avoid in the past, the Fund will not provide coverage to the Post-Gazette's Union employees. The Post-Gazette will need to enter into an agreement with the fund, just as all other contributing employers are required to, obligating the Post-Gazette to submit contributions to the Fund at the rates set by the Trustees for the level of coverage provided to the Post-Gazette's Union employees.

If you have any questions, please feel free to contact me directly.

Sincerely,

*Levi K. Logan*

Levi K. Logan

cc:    William Parry, Jr. (via email)

Case: 24-3057    Document: 75    Page: 46    Date Filed: 06/17/2025

KING & BALLOW

LAW OFFICES

26 CENTURY BOULEVARD

SUITE NT 700

NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456

FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

April 28, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA  15222

Re:    Effects Bargaining with Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Joe:

On March 28, 2025, the Company reached out to you by letter and requested effects bargaining over the Third Circuit's Order to "rescind the changes in the terms and conditions of employment related to healthcare." You refused to engage in effects bargaining.

On April 25, 2025, you sent me a letter which included a letter from Levi K. Logan of the firm Logan, Mettley and Newcomer, PLC addressed to you dated April 24, 2025. Mr. Logan represented that when the Guild employees left the Employment Partners Benefit Fund (the "Fund") in 2020, the Fund terminated that plan. However, that plan as modified was terminated in 2022. Nevertheless, Mr. Logan stated the Fund would create the same plan for the Guild bargaining unit that was in place when they left the Fund in 2020. He further indicated that the Company would need to enter into an agreement with the Fund, which we assume would be a Participation Agreement.

As you know, the Company was never obligated to sign a Participation Agreement to participate in the Fund or any other type of agreement with the Fund as a condition of participation as a contributing employer. Moreover, several NLRB Administrative Law Judges have ruled that the Company is not legally required to sign a Participation Agreement in order to participate in a Taft-Hartley health and welfare fund, such as the Fund.

Again, the Company is ready to bargain over the effects of the Court's order on healthcare.

Sincerely,

Richard C. Lowe/by 7

Richard C. Lowe

cc:     Rob Weber

ATTACHMENT K

Union Letter to Lowe & Hentosz/PPG dated 5/2/2025

## JUBELIRER, PASS & INTRIERI, P.C.
### Attorneys-at-Law

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

May 2, 2025

### VIA EMAIL AND FIRST CLASS MAIL

Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Brian M. Hentosz, Esquire
Littler Mendelson P.C.
One PPG Place
Suite 2400
Pittsburgh, PA 15222

Re:     Guild Health Insurance

Dear Richard and Brian:

Enclosed are two (2) documents that need to be executed in order to reinstitute the healthcare plan that existed prior to the illegally unilaterally implemented healthcare. The "Healthcare Insurance Enrollment Application" should be given to each of the current employees to fill out and return as soon as possible but no later than May 9, 2025. The other form is for the Post-Gazette to fill out and return to the Employment Partners Benefits Fund. These forms should be returned to the Fund and I would appreciate a copy being sent to the undersigned. As time is of the essence in order to have the Fund restore the healthcare program that existed under the expired Collective Bargaining Agreement your prompt attention is essential.

Finally, the union is proposing May 29th 10:00 a.m. to begin bargaining for a new Collective Bargaining Agreement. If that date is not available then June 5th is also available. If you have any questions please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc:     Nancy Wilson
        Jason Scherer
        William Parry
        Levi Logan
        Zack Tanner

219 Fort Pitt Boulevard 1st Floor, Pittsburgh, PA 15222-1576  Ph: 412.281.3850 • 412.261.0147  F: 412.281.1985
facebook.com/jpilaw  www.jpilaw.com



**MOTION ATTACHMENT K**

# EMPLOYMENT PARTNERS BENEFITS FUND

**50 Abele Rd., Ste. 1005 Bridgeville, PA 15017**
Telephone: 1-412-363-2700 ◆ Toll Free: 1-800-242-0410 ◆ Fax: 1-412-363-0580
Website: www.epbfund.com

Dear Employer:

Please update your company information below and return with your payment.

Company Name: _____

Contact Name: _____

Contact Number: _____

Contact Fax: _____

Contact Email: _____

**Would you like your monthly invoice emailed?**  ☐ Yes    ☐ No

**Would you like information for ACH payments?**  ☐ Yes    ☐ No

# HEALTH INSURANCE ENROLLMENT APPLICATION

**Employer Name**

**Employee First Name/Middle Initial/Last Name**

**Social Security Number**

## EMPLOYEE INFORMATION

| Street Address | | | | City | | State | Zip |
|---|---|---|---|---|---|---|---|

| Employee Phone # ( ) | Employee Hire Date | | | | FOR OFFICE USE ONLY | | |
|---|---|---|---|---|---|---|---|
| | Month | Day | Year | Group Number | PayLoc | | Effective Date |

| Complete Where Applicable | First Name / Middle Initial / Last Name | Social Security Number | Birthday Mo  Dy  Yr | Sex | Effective Date |
|---|---|---|---|---|---|
| Self | | | | | |
| Spouse | | | | | |
| Child | | | | | |
| Child | | | | | |
| Child | | | | | |
| Child | | | | | |
| Child | | | | | |

Employee Signature _____     Date _____

# ATTACHMENT L

Regional Director's Compliance Letter dated 5/2/2025



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

REGION 06                                         Agency Website: www.nlrb.gov
1000 Liberty Ave., Rm. 904                        Telephone: (412)395-4400
Pittsburgh, PA 15222-4111                         Fax: (412)395-5986

May 2, 2025

Mark E. Hunt, Esq.
mhunt@kingballow.com
Richard C. Lowe, Esq.
rlowe@kingballow.com
Michael D. Oesterle, Esq.
moesterle@kingballow.com
Jennifer A. Sherman, Esq.
jscherman@kingballow.com
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

Morgan S. Dull, Esq.
mdull@littler.com
Brian M. Hentosz, Esq.
bhentosz@littler.com
Littler Mendelson, P.C.
One PPG Place, Suite 2400
Pittsburgh, PA 15222

Re:    PG Publishing Co., Inc. d/b/a
       Pittsburgh Post-Gazette
       Case 06-CA-248017

Dear People:

Included with this letter is a copy of the Order of the United States Court of Appeals for the Third Circuit that issued on Monday, March 24, 2025, granting in part and denying in part the General Counsel's motion for Temporary Relief Under Section 10(e) of the National Labor Relations Act.  The Order requires PG Publishing Co., Inc, d/b/a Pittsburgh Post-Gazette, hereinafter referred to as Respondent, to take the following actions:

(a)  On request, bargain with the Newspaper Guild of Pittsburgh/CWA Local 38061, hereinafter referred to as the Union, as the exclusive collective-bargaining representative of the employees listed in the Order with respect to terms and conditions of employment and, if an understanding is reached, embody the understanding in a signed agreement.

(b)  Submit written bargaining progress reports every 30 days to the compliance officer for Region 6 of the National Labor Relations Board and serve copies of the reports on the Union.

(c) On request by the Union, rescind the changes in the terms and conditions of employment related to health insurance for its unit employees that were unilaterally implemented on about July 27, 2020.

(d) Before implementing any changes in wages, hours, or other terms and conditions of employment of unit employees, notify and, on request, bargain with the Union as the exclusive collective-bargaining representative of employees in the bargaining unit described above.

According to the Union, in a letter dated March 26, 2025, it requested that the Respondent rescind the changes in the terms and conditions of employment related to health insurance for the News Guild's bargaining unit that were unilaterally implemented on about July 27, 2020.  Please provide a status update regarding what the Respondent has done to satisfy this rescission request as soon as possible, but no later than **Friday, May 9, 2025**[1].

With respect to the requirement that the Respondent bargain with the Union prior to any changes in terms and conditions of employment of the named bargaining unit employees, once the first bargaining meeting has been scheduled, the Respondent must submit bargaining progress reports to the Region every 30 days with a copy to the Union.

If you have any questions, or would like to discuss this matter, please contact me as soon as possible.

/s/ Jason S. Scherer
Compliance Officer

Direct Dial: 412-690-7117
E-mail Address: jason.scherer@nlrb.gov

cc:     Joseph J. Pass, Esq.
        Jubelirer, Pass & Intrieri, P.C.
        219 Fort Pitt Blvd.
        Pittsburgh, PA 15222
        jjp@jpilaw.com

---

[1] The NLRB requires mandatory electronic filing of all case documents.  See GC 20-01 for more information. Written instructions for using the Agency's e-filing system and the Agency's Electronic Filing Terms and Conditions have been posted on the Agency's website.  The Agency's website also contains a video demonstration which provides step-by-step instructions for e-filing.

# ATTACHMENT M

Regional Director's Supplemental Letter dated 5/2/2025



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| REGION 06 | Agency Website: www.nlrb.gov |
| 1000 Liberty Ave Rm 904 | Telephone: (412)395-4400 |
| Pittsburgh, PA 15222-4111 | Fax: (412)395-5986 |
| | Agent's Direct Dial: (412)690-7117 |

Email address: jason.scherer@nlrb.gov

May 02, 2025

Mark E. Hunt, Esq.
mhunt@kingballow.com
Richard C. Lowe, Esq.
rlowe@kingballow.com
Michael D. Oesterle, Esq.
moesterle@kingballow.com
Jennifer A. Sherman, Esq.
jscherman@kingballow.com
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

Morgan S. Dull, Esq.
mdull@littler.com
Brian M. Hentosz, Esq.
bhentosz@littler.com
Littler Mendelson, P.C.
One PPG Place, Suite 2400
Pittsburgh, PA 15222

       Re: PG Publishing Co., Inc. d/b/a
          Pittsburgh Post-Gazette
          Case 06-CA-248017

Dear Mr. Hunt, Mr. Lowe, Mr. Oesterle, Ms. Sherman, Ms. Dull and Mr. Hentosz:

   I am sending this letter to supplement the information contained in the letter that Compliance Officer Jason Scherer sent to everyone earlier today.

   This is to advise that it is the Region's position that full compliance with the 10(e) injunction requires the Respondent to restore the health benefit plan that was provided for in the parties' expired collective-bargaining agreement and is presently called- Employment Partners

PG Publishing Co., Inc. d/b/a Pittsburgh      - 2 -                                      May 02, 2025
Post-Gazette
Case 06-CA-248017

Benefits Fund.  As requested by Jason Scherer, please notify the Region by May 9, 2025 what steps the Respondent has taken to comply with the court injunction by (1) submitting documentary evidence that Respondent has taken steps to enroll its unit employees in the Employment Partners Benefits Fund and the effective date of coverage and (2) dates that Respondent has scheduled with the Union to resume bargaining as requested by Joe Pass in his letter dated May 2, 2025.  All documentary evidence should be submitted via e-file at www.nlrb.gov.

     If the Region is not satisfied that Respondent has taken satisfactory measures to comply with the court's 10(e) injunction by May 9, 2025, as outlined above, then the Region will be recommending contempt proceedings be initiated.


     Your cooperation in this matter will be appreciated.

          Thank you,

          /s/ Nancy Wilson

          Regional Director
          On behalf of

          JASON S. SCHERER
          Compliance Officer

Enclosures
- Court Judgment
- Notices to Employees
- Certification of Posting and Distribution Form
- Certification of Compliance Form

cc:    Joseph J. Pass Esq.
      Jubelirer, Pass & Intrieri, P.C.
      219 Fort Pitt Blvd.
      Pittsburgh, PA 15222
      jjp@jpilaw.com

# ATTACHMENT N

Lowe/PPG Letter to Regional Director dated 5/9/2025

KING & BALLOW

LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

May 9, 2025

**Via E-mail and U.S. Mail**
(Jason.scherer@nlrb.gov)

Jason S. Scherer, Compliance Officer
National Labor Relations Board
Region 06
1000 Liberty Avenue, Room 904
Pittsburgh, PA 15222-4111

      Re:    PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette
              Case 06-CA-248017

Dear Mr. Scherer,

Thank you for your May 2, 2025 letter. As the Region already knows, by letter dated March 28, 2025, the Company reached out to Mr. Pass and offered to meet for contract negotiations on April 2, 2025. (Attachment 1). Mr. Pass refused to meet.

Contract negotiations were last held on November 13, 2024. At that meeting, Union President, Mr. Zach Tanner threw a chair through a wall in a meeting room at the William Penn Omni Hotel. Mr. Tanner was later charged with a Police Criminal Complaint for Criminal Mischief because of his violent destruction of hotel property. Mr. Lowe asked Mr. Pass in the March 28 letter if hotel security at the Omni will allow Mr. Tanner to enter hotel property to attend future meetings at the Omni. Mr. Pass never responded to the Company's inquiry.

After refusing to meet in contract negotiations, Mr. Pass, in his May 2, 2025 letter suddenly reversed his prior refusal to bargain and offered May 29 and June 5, 2025 for contract bargaining. The Company has informed Mr. Pass that June 5, 2025 is available to the Company for contract negotiations. The Company is still awaiting word if the William Penn Omni Hotel security will allow Mr. Tanner back in the building for negotiations.

The Region is also aware that besides requesting contract bargaining on March 28, the Company, on March 27, offered to engage in confidential strike settlement discussions pursuant to Rule 408 of the Federal Rules of Evidence. (Attachment 2). The Union rejected the Company's offer to engage in strike settlement discussions.

**MOTION ATTACHMENT N**

Case: 24-3057    Document: 75    Page: 61    Date Filed: 06/17/2025

On March 28, 2025 the Company also reached out to Mr. Pass by letter and requested effects bargaining over the Third Circuit's Order to "rescind the changes in the terms and conditions of employment related to healthcare." *Clear Pine Mouldings Inc.,* 238 NLRB 69 (1978), enf'd. 632 F.2d 721 (9th Cir. 1980). (Attachment 3). The Union refused to engage in effects bargaining regarding renewed participation in the Employment Partners Benefits Fund, (the "Fund") and announced in its March 31 letter that the Union would seek sanctions instead. (Attachment 4).

On April 28, 2025, the Company again requested effects bargaining on healthcare to address Levi K. Logan, Fund counsel's representations in his April 24, 2025 letter to Mr. Pass. In a letter dated April 30, 2025, the Union again refused to engage in effects bargaining. Still again, in a letter dated May 5, 2025, Mr. Pass, on behalf of the Union refused to engage in effects bargaining.

The Company is prepared to rescind the Company's healthcare plan as ordered by the Court. Mr. Pass, in his April 9, 2025 letter stated that the bargaining unit employees will remain covered by the Company's healthcare plan until the Fund reinstates coverage for bargaining unit employees. (Attachment 5).

Mr. Pass also stated in his April 9 letter that the Fund required healthcare census information for the bargaining unit employees so that an appropriate premium for these individuals can be established by the Fund. The Union also made an information request on April 10, 2025, requesting the same healthcare census information. The Company provided this information to the Union on April 23. Mr. Pass subsequently stated in his April 24, 2025 letter that this information was submitted to the Fund.

Mr. Pass also requested the Company in the April 24 letter to reach out to the Fund to obtain the cost of participating in the Fund's insurance plans. The Company reached out to Fund's counsel and requested this information on May 5, 2025. (Attachment 6). Fund Counsel replied on May 8, 2025. The Company responded to Fund Counsel's email on May 9, 2025. (Attachment 7).

Sincerely,

Richard C. Lowe

cc:    Rob Weber
       Nancy Wilson

ATTACHMENT 1

Case: 24-3057    Document: 75    Page: 63    Date Filed: 06/17/2025

# KING & BALLOW

### LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

**Direct Dial: (615) 726-5420**
**Direct Facsimile: (888) 688-0482**
**E-mail: rlowe@kingballow.com**

March 28, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

      Re:    Contract Negotiations with Newspaper Guild of Pittsburgh/CWA Local 38061
              (the "Union")

Dear Joe:

      Thank you for your March 26, 2025 letter in which you request contract negotiations. The parties met last in contract negotiations on November 13, 2024. At that meeting, Union President, Mr. Zach Tanner inexplicably threw a chair through a wall in a meeting room at the Omni William Penn Hotel. Mr. Tanner was later charged with a Police Criminal Complaint for Criminal Mischief because of this destruction of hotel property. Please let me know if hotel security at the Omni will allow Mr. Tanner to enter hotel property to attend future meetings at the Omni. If he can, I suggest we meet again for our next contract negotiations at the Omni.

      The Company is available next week, beginning Wednesday, April 2, 2025 to continue contract negotiations. We are not amenable to the presence of a mediator for the reasons we shared with you in the past.

      The Company looks forward to our next meeting.

              Sincerely,

              Richard C. Lowe

cc:    Rob Weber

# ATTACHMENT 2

KING & BALLOW
LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

**Direct Dial: (615) 726-5420**
**Direct Facsimile: (888) 688-0482**
**E-mail: rlowe@kingballow.com**

March 27, 2025

**<u>Via Email and U.S. Mail</u>**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

Re:    Confidential Strike Settlement Discussions Pursuant to Rule 408 of the Federal
Rules of Evidence and Newspaper Guild of Pittsburgh/CWA Local 38061 (the
"Union")

Dear Joe:

As you are aware, the Post-Gazette and four (4) other unions at the Newspaper each reached a Labor Dispute Settlement Agreement ("Agreement") which settled its strike against the Company on an amicable basis. The Teamsters, Pressmen, Mailers and the Advertising bargaining units all engaged in successful confidential settlement discussions under Rule 408 of the Federal Rules of Evidence to reach these Agreements.

The Agreements are fair to both parties. For example, Administrative Law Judge Lisa Friedheim-Weis fully supported and endorsed the Labor Dispute Strike Settlement Agreement reached with Teamsters Local Union 211/205 in April 2024. I have attached a copy of Judge Friedheim-Weis's Order approving the Labor Dispute Settlement Agreement to settle the strike. (Attachment 1). The judge found the settlement agreement to be reasonable and that it satisfied the reasonableness standard set forth in *Independent Stave*, 287 NLRB 740 (1987).

In March 2025, the Mailers, Pressmen and Advertising unit unions each signed a substantially similar Labor Dispute Settlement Agreement amicably settling its strike against the Post-Gazette.

The Company invites the Union to also participate in confidential strike settlement discussions under Rule 408 so that an amicable agreement to end the Union's strike can be reached. The Company is available next week, beginning Tuesday, April 1, 2025 to engage in Rule 408 discussions. I look forward to a favorable response from the Union.

Sincerely,

Richard C. Lowe

Attachment

cc:     Rob Weber

Date Filed: 06/17/2025     Page: 66     Document: 75     Case: 24-3057

**<u>Attachment 1</u>**

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES

PG PUBLISHING CO., INC.,
d/b/a PITTSBURGH POST-GAZETTE

**Respondent**

Case  06–CA–302612

    **and**

NEWSPAPER, NEWSPRINT, MAGAZINE
AND FILM DELIVERY DRIVERS,
HELPERS AND HANDLERS, A/W THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AND ITS LOCAL UNION
NO. 211/205 OF ALLEGHENY CO.

**Charging Party**

## ORDER APPROVING SETTLEMENT AND CONDITIONALLY CLOSING TRIAL RECORD

Trial proceedings in this case were held before me at Region 6 from January 22-25, 2024. During trial, the parties presented evidence related to complaint allegations that Respondent violated Section 8(a)(5) and (1) of the National Labor Relations Act by failing to bargain with the Charging Party.

As of the issuance of this Order, post-trial briefs had been set for submission on April 19, 2024. However, on April 16, 2024, I received email communications from Counsels for the General Counsel, Respondent, and Union, along with a non-Board settlement of the litigated matter, and encapsulating the two open cases between the parties, which had not been part of the instant proceeding, and for which complaint has not issued. The parties have requested approval of the non-Board settlement and a conditional withdrawal of the charge with a 60-day maximum period to ensure compliance and allow for a waiver period.

Since the trial record is open and the case is under my jurisdiction, I must evaluate whether the settlement should be approved under the applicable legal standard.

### Applicable Legal Standard

In *UPMC*, 365 NLRB No. 153 (2017), the Board announced that it was returning to the practice of analyzing all settlement agreements under the reasonableness standard set forth in *Independent Stave*, 287 NLRB 740 (1987). The *Independent Stave* standard

requires the judge to examine all the surrounding circumstances to determine whether a proposed non-Board settlement agreement is reasonable, including considering the following factors:

> (1) whether the charging party(ies), the respondent(s), and any of the individual discriminatee(s) have agreed to be bound, and the position taken by the General Counsel regarding the settlement;

> (2) whether the settlement is reasonable in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of litigation;

> (3) whether there has been any fraud, coercion, or duress by any of the parties in reaching the settlement; and

> (4) whether the respondent has engaged in a history of violations of the Act or has breached previous settlement agreements resolving unfair labor practice disputes.

*UPMC*, 365 NLRB No. 153, slip op. at 7 (quoting *Independent Stave*).

**Discussion and Analysis – Is the Proposed Settlement Agreement Reasonable under *Independent Stave*?**

I have reviewed the non-Board settlement that the parties have presented and executed.

*Independent Stave* Factor One

Respondent and Teamsters Local Union No. 211/205 (Charging Party) have agreed to be bound by the proposed non-Board settlement agreement. Counsel for the General Counsel has agreed in writing that it has no objection to the non-Board settlement agreement. Based on the parties' positions and in the absence of any objections, I find that the first *Independent Stave* factor weighs in favor of approving the proposed settlement.

*Independent Stave* Factor Two

The non-Board settlement provides an adequate measure of relief to the General Counsel, to the Union, and also to members of the bargaining unit at issue, for the alleged violations in the complaint, taking into account the nature of the alleged violations, the risks inherent in litigation, and the stage of litigation. Although the parties presented all their evidence on the matter, the merits of the complaint allegations still hang in the balance, pending the parties' post-trial briefs, and my decision based on the evidentiary record. Given those variables, I find that *Independent Stave* factor two favors approving the proposed settlement agreement.

2

*Independent Stave* Factor Three

I find that *Independent Stave* factor three favors approval of the proposed settlement agreement. There are no allegations or evidence of any fraud, coercion, or duress by any party in reaching the proposed settlement agreement.

*Independent Stave* Factor Four

I have not been advised of any prior unfair labor practice findings against Respondent concerning this Charging Party or this bargaining unit that would indicate that Respondent has engaged in a history of violations of the Act. I also have not been advised of any evidence that Respondent has breached previous settlement agreements resolving unfair labor practices. Accordingly, I find that *Independent Stave* factor four favors approving the proposed settlement agreement.

Conclusion

After considering the proposed settlement agreement, the surrounding circumstances, and each of the *Independent Stave* factors, I find that the proposed settlement agreement is reasonable and satisfies the *Independent Stave* standard for approval. Accordingly, I hereby approve the settlement in this case and enter the following:

**ORDER**

With good cause being shown, I hereby approve the non-Board settlement that the relevant parties have executed. As the settlement agreement resolves all complaint allegations, the trial record in this case is hereby conditionally closed until June 17, 2024, at such time, absent an objection made in writing by a party, the trial record shall be automatically and permanently closed. The briefing schedule for this matter shall be held in abeyance until such time that the trial record is permanently closed or there is a written objection filed during the conditional closing period.

IT IS SO ORDERED.

Dated: April 17, 2024
Washington, D.C.

*Lisa Friedheim-Weis*

Lisa Friedheim-Weis
Administrative Law Judge

3

# ATTACHMENT 3

KING & BALLOW

LAW OFFICES
26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

March 28, 2025

**Via Email and U.S. Mail**
(jjp@jpilaw.com)

Mr. Joseph J. Pass
Jubelirer, Pass & Intrieri P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

  Re: Effects Bargaining with Newspaper Guild of Pittsburgh/CWA Local 38061 (the
    "Union")

Dear Joe:

  As you are aware, yesterday the Post-Gazette filed a Motion for Clarification of the Order
Granting Injunctive Relief in Part. The Company is ready to negotiate over the effects of the
Court's Order to "rescind the changes in the terms and conditions of employment related to
healthcare."

  The Company is available next week, beginning Thursday, April 3, 2025 to bargain over
the effects of the Court's Order on healthcare.

  Please let me know if that works for the Union and I will secure a meeting room at the
Omni.

          Sincerely,

          Richard C. Lowe

cc: Rob Weber

# ATTACHMENT  4



**JUBELIRER, PASS & INTRIERI, P.C.**
*Attorneys-at-Law*

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Butsch

*also licensed in Ohio

Ben Paul Jubelirer (1904–1983)
Frank P. G. Intrieri (1942–1976)

jjp@jpilaw.com

March 31, 2025

**VIA EMAIL**
**AND FIRST CLASS MAIL**
Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:     Newspaper Guild of Pittsburgh and Post-Gazette

Dear Richard:

I received your correspondence of March 28, 2025, as well as your correspondence seeking the Guild's consent to engage in discussions pursuant to Rule 408. As to your request to negotiate pursuant to Rule 408, the production units were in a far different position than the News Guild. For the past eight (8) years you have been telling them the Post-Gazette was going to be a strictly digital newspaper, and subsequently the Post-Gazette sold its "printing press." A buyout to those unions was an alternative to bargaining for a contract when there would no longer be any print editions.

The News Guild on the other hand is in a far different position. The Newspaper Guild of Pittsburgh are journalists and love being journalists. Obviously, the Post-Gazette going to a digital newspaper has absolutely no impact on journalists except for the fact the Post-Gazette would most likely need more journalists. Therefore, the News Guild has no interest in selling the jobs of its members. Your request to bargain pursuant to Rule 408 is respectfully rejected.

As for your letter of March 28, 2025, wherein you request the Guild engage in "effects bargaining" you obviously suffer a misconception of the historically accepted standard that when an employer's illegally implemented terms are rescinded the employer restores the conditions that existed prior to their illegal implementation. Under your convoluted theory the PGs illegal activity is rewarded if the union requests the employer rescind the illegally imposed healthcare. Under your theory, considering the Post-Gazette's history of bad faith bargaining a new healthcare agreement may take years. In the meantime, the Post-Gazette will continue its bad faith bargaining and gain leverage when the illegally implemented healthcare is removed leaving the employees without any healthcare.



219 Fort Pitt Boulevard 1" Floor, Pittsburgh, PA 15222-1576  Ph: 412.281.3850 • 412.261.0147  F: 412.281.1985
facebook.com/jpilaw  www.jpilaw.com

Case: 24-3057    Document: 75    Page: 74    Date Filed: 06/17/2025

The Motion for clarification which the PG filed is nothing more than another delay tactic- a tactic the Post-Gazette has engaged in for the past eight (8) years. We shall be filing a Response to that Motion and seeking sanctions. Once the healthcare contained in the recently expired agreement is reinstated we can begin bargaining for the terms and conditions of a new Agreement.

There is no "effects bargaining" when a Court Order allows the union to request illegally implemented terms be removed, because the expired agreement is put in its place. We urge the company to move forward as quickly as possible to reinstate the healthcare program set forth in the expired Collective Bargaining Agreement as interpreted by Arbitrator Nadelbach and enforced by the US Court of Appeals for the Third Circuit so that the PG can move forward with its obligation to engage in good faith bargaining for a new Collective Bargaining Agreement. If you have any questions please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc:     Zack Tanner

ATTACHMENT 5

JUBELIRER, PASS & INTRIERI, P.C.
*Attorneys-at-Law*

Joseph J. Pass
Edward H. Walter
James A. Welker
Joseph Santino Pass*
Steven E. Winslow
Patrick K. Lemon
J. Skye McCollum
Calder M. Buisch

*also licensed in Ohio

Ben Paul Jubelirer (1904-1983)
Frank P. G. Intrieri (1942-1976)

jjp@jpilaw.com

April 9, 2025

**VIA EMAIL**
**AND FIRST CLASS MAIL**
Richard C. Lowe, Esquire
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214

Re:     Pittsburgh Post-Gazette and Pittsburgh News Guild

Dear Richard:

        As you are aware the Third Circuit entered an Order requiring the Post-Gazette, upon request of the union, rescind its illegal unilateral implemented healthcare. As a result, I forwarded you a letter requesting the Post-Gazette rescind the unilaterally imposed healthcare, and the healthcare provided by the Employment Partners Benefits Fund as set forth in exhibit B of the parties expired Agreement be reinstituted.

        I had the opportunity to speak with William Parry, the executive director of the Fund and he assured me that the healthcare can be reinstituted. However, the Fund is in need of a census of all the employees in the bargaining unit be provided so that an appropriate premium for these individuals is established. Therefore, it is incumbent that you immediately provide Mr. Parry with a census of all current employees under the Guild's jurisdiction who are actively employed at the Post-Gazette as well as those individuals on strike be included in the census. It is incumbent that the information be provided to Mr. Parry as soon as possible so that the healthcare can be implemented consistent with the Order of the U.S. Court of Appeals for the Third Circuit.

        In the meantime, employees actively employed will remain covered by the inferior benefits unilaterally implemented until the benefits set forth in the Collective Bargaining Agreement which are provided by the Employment Partners Benefits Fund are reinstituted. When the Post-Gazette provides the census information to the Employment Benefits Partners Fund please copy the undersigned so we are aware that the information is being transmitted.

        Finally, as you are aware the fact that the Post-Gazette filed a "Motion for Clarification" does not operate as an automatic stay of the Court's Order. Although the PG requests for an en




banc hearing does stay the Court's Order we expect during the time the Third Circuit determines your motion, all of the necessary information will be provided to the Employment Benefits Partners Fund. As a result, the health insurance provided by the Employment Benefits Partners Fund will be in place upon the decision of the Third Circuit denying your application for an en banc hearing. Failure of the Post-Gazette to abide by the command of the Third Circuit will be dealt with accordingly.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Joseph J. Pass

JJP/ae

cc:     William Parry

# ATTACHMENT 6

Case: 24-3057      Document: 75      Page: 80      Date Filed: 06/17/2025

# KING & BALLOW

## LAW OFFICES

26 CENTURY BOULEVARD
SUITE NT 700
NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456
FACSIMILE: 888/688-0482

www.kingballow.com

Direct Dial: (615) 726-5420
Direct Facsimile: (888) 688-0482
E-mail: rlowe@kingballow.com

May 5, 2025

**Via E-mail and U.S. Mail**
(lkl@lmnlawgroup.com)

Levi K. Logan
Logan, Mettley & Newcomer, PLC
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203

    Re:    Employment Partners Benefits Fund (the "Fund") – Newspaper Guild of
          Pittsburgh/CWA Local 38061 (the "Union")

Dear Mr. Logan,

    On April 28, 2025, the Post-Gazette made another request for Mr. Pass to engage in effects bargaining over the Court's Order on healthcare. The Union refused.

    The Post-Gazette has provided the Union with the census information they requested and Mr. Pass stated in his April 24, 2025 letter that he forwarded Mr. Parry that census information.

    You stated in your April 24, 2025 letter that the Fund will create the same Plan that was in effect when the Post-Gazette's Guild bargaining unit employees left the Fund and began coverage under the Post-Gazette's healthcare plan.

    Please provide the Post-Gazette the 9PG 2000/4000 plan design which the Fund had in place immediately before the Guild participants were moved to coverage under the Company's Plan. Also provide the premium costs the Fund is proposing to charge for participation in the Plan design.

    For your information, the Post-Gazette has never been a signatory to any Participation Agreement or other agreement with the Fund as a condition for participation.

                Sincerely,

                Richard C. Lowe

cc:    Brian M. Hentosz (via e-mail)
       Joseph J. Pass (via e-mail)

Case: 24-3057    Document: 75    Page: 81    Date Filed: 06/17/2025

# ATTACHMENT 7

# KING & BALLOW

## LAW OFFICES
### 26 CENTURY BOULEVARD
### SUITE NT 700
### NASHVILLE, TENNESSEE 37214

TELEPHONE: 615/259-3456

FACSIMILE: 888/688-0482

www.kingballow.com

**Direct Dial: (615) 726-5420**
**Direct Facsimile: (888) 688-0482**
**E-mail: rlowe@kingballow.com**

May 9, 2025

<u>**Via E-mail and U.S. Mail**</u>
(lkl@lmnlawgroup.com)

Levi K. Logan
Logan, Mettley & Newcomer, PLC
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203

    Re:    Employment Partners Benefits Fund (the "Fund") – Newspaper Guild of
           Pittsburgh/CWA Local 38061 (the "Union")

Dear Mr. Logan,

    Thank you for your May 8, 2025 letter in which you attach the SPD for 2017 for the Guild bargaining unit at the Post-Gazette. The Company will promptly review this information.

    In my May 5 letter, you were asked to provide the 9PG 2000/4000 plan design which the Fund had in place immediately before the Guild participants were moved to coverage under the Company's Plan. You were also asked to provide the premium costs the Fund is proposing to charge for participation in this Plan design. Please provide that information as soon as possible.

    Finally, as you are aware, the Post-Gazette has never been a signatory to any Participation Agreement or other agreement with the Fund as a condition for participation.

    The Company suggests the parties enter into the following written understanding as a condition of participation in the Fund:

    The Fund agrees the employer is not a party to any Participation Agreement, Trust
    Agreement or any other agreement with the Fund. The employer's notice of the
    terms of the Trust Agreement and any course of conduct by the employer that is
    caused by the Fund to provide benefit coverage to employees, shall not be deemed
    an acceptance by the employer of any Trust Agreement, including all rules,
    procedures, and provisions thereof; Participation Agreement; or any other
    agreement with the Fund.

Levi K. Logan
May 9, 2025
Page 2

       This will maintain the status quo which existed prior to the implementation of the Company's healthcare plan in July 2020.

       Thank you for your assistance with this matter.

Sincerely,

Richard C. Lowe

cc:    Brian M. Hentosz (via e-mail)
       Rob Weber (via e-mail)

ATTACHMENT O

Regional Director's Letter to Lowe/PPG dated 5/12/2025



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

REGION 06
1000 Liberty Ave Rm 904
Pittsburgh, PA 15222-4111

Agency Website: www.nlrb.gov
Telephone: (412)395-4400
Fax: (412)395-5986
Agent's Direct Dial: (412)690-7117

May 12, 2025

Richard C. Lowe, Esq.
rlowe@kingballow.com
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

Re:    PG Publishing Co., Inc. d/b/a Pittsburgh
       Post-Gazette
       Case 06-CA-248017

Dear Mr. Lowe:

I am writing in response to your letter dated May 9, 2025, that was addressed to the Region's Compliance Officer Jason Scherer. Mr. Scherer is presently busy with another assignment so I am responding on his behalf. A copy of my May 2, 2025, supplemental compliance letter is also attached.

First, I note that the parties are scheduled to resume bargaining for a successor collective bargaining agreement on June 5, 2025. Thus, the 30-day "written bargaining progress report" will be measured from June 5, 2025, and should be filed with the Region's Compliance Officer, Jason Scherer on the fifth day of each subsequent month. A copy of this written report should also be served on the Union at the same time it is sent to the Region.

Second, regarding the rescission of changes to the unit employees' health benefits, this remedy requires the Respondent to restore the health benefit plan that was provided for in the parties' expired collective bargaining agreement (CBA). Accordingly, please address the following issues that were raised in your May 9, 2025, letter to Fund's attorney Levi Logan and attached as Attachment 7 in your letter to Mr. Scherer:

PG Publishing Co., Inc. d/b/a Pittsburgh        2        May 12, 2025
Post-Gazette
Case 06-CA-248017

(a) The reason that you requested the Fund furnish the premium costs for a "9PG 2000/4000 plan design." The deductibles for this plan design is significantly greater than the deductibles in the plan design in the expired CBA. It appears that the parties subsequently agreed to change the plan design that is contained in the expired CBA to a "850/1600 design." Thus, it is the Region's position that the Fund's 850/1,600 plan design should be restored after the Respondent rescinds the "Company plan" and that the Respondent should be requesting the premium cost information for this plan.

(b) Provide copies of the Fund's Participation Agreement. It appears that the Respondent is objecting to executing a signed Participation Agreement because the Fund did not require such prior to July 2020. Thus, provide a position statement setting forth the reasons that Respondent is refusing to execute the Participation Agreement.

A response to the above issues is due by 5:00 pm (ET) on Wednesday, May 14, 2025.

Very truly yours,

/s/ *Nancy Wilson*

Nancy Wilson
Regional Director

Enclosure

cc:

      Mark E. Hunt, Esq.
      mhunt@kingballow.com
      Richard C. Lowe, Esq.
      rlowe@kingballow.com
      Michael D. Oesterle, Esq.
      moesterle@kingballow.com
      Jennifer A. Sherman, Esq.
      jscherman@kingballow.com
      King & Ballow
      315 Union Street, Suite 1100
      Nashville, TN 37201

      Morgan S. Dull, Esq.
      mdull@littler.com
      Brian M. Hentosz, Esq.
      bhentosz@littler.com
      Littler Mendelson, P.C.
      One PPG Place, Suite 2400
      Pittsburgh, PA 15222

# ATTACHMENT P

Regional Director's Letter dated 5/13/2025



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

REGION 06                                Agency Website: www.nlrb.gov
1000 Liberty Ave Rm 904                  Telephone: (412)395-4400
Pittsburgh, PA 15222-4111                Fax: (412)395-5986
                                         Agent's Direct Dial: (412)690-7123

May 13, 2025

Mark E. Hunt, Esq.
mhunt@kingballow.com
Michael D. Oesterle, Esq.
moesterle@kingballow.com
Richard Lowe, Esq.
rlowe@kingballow.com
Jennifer A. Sherman, Esq.
jsherman@kingballow.com
King & Ballow
315 Union Street, Suite 1100
Nashville, TN 37201

Morgan S. Dull, Esq.
mdull@littler.com
Brian M. Hentosz, Esq.
bhentosz@littler.com
Littler Mendelson, P.C.
One PPG Place, Suite 2400
Pittsburgh, PA 15222

Re:    PG Publishing Co., Inc. d/b/a Pittsburgh
       Post-Gazette
       Case 06-CA-248017

Dear Mr. Hunt, Mr. Lowe, Mr. Oesterle, Ms. Sherman, Ms. Dull and Mr. Hentosz.:

This letter supplements the letter that I sent on May 12, 2025, and is based on additional information that I obtained regarding the correspondence between the Fund's attorney Levi Logan and Respondent's counsel Mr. Lowe.

PG Publishing Co., Inc. d/b/a Pittsburgh                    2                                May 13, 2025
Post-Gazette
Case 06-CA-248017

Attached is a copy of the 9PG summary plan description (SPD) that was in place for the Guild unit in January 2017 and a copy of the premium costs for this plan design that Mr. Logan provided to Respondent's counsel Mr. Lowe on May 8, 2025.  Based on the information contained in the SPD, the deductible for single coverage is $850 and for family coverage is $1,700.  This recently obtained information corrects the plan design information contained in my May 12th letter.  Further, Mr. Logan also provided Mr. Lowe with the costs for this plan and indicated that the Fund needs "roughly three weeks" to process employee enrollment forms.

Accordingly, by **5 p.m. on Wednesday, May 14th**, please provide the Region with copies of the employee enrollment forms and correspondence showing that the enrollment forms were sent to the Fund.  This requested information is in addition to the information that was requested in my May 12th letter.  A failure to timely comply with the Region's request may result in the Region recommending that Respondent is in contempt of the Court's 10(e) injunction that issued on March 24, 2025.

Very truly yours,

/s/ *Nancy Wilson*

Nancy Wilson
Regional Director

Enclosure

cc:
      Joseph J. Pass Esq.
      jjp@jpilaw.com
      Jubelirer, Pass & Intrieri, P.C.
      219 Fort Pitt Blvd.
      Pittsburgh, PA 15222

# ATTACHMENT Q

Proposed Order

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **PG PUBLISHING CO., INC.** | ) | |
| **d/b/a PITTSBURGH POST-GAZETTE** | ) | Nos.  24-2788 |
| | ) | 24-3057 |
| **Petitioner/Cross-Respondent** | ) | |
| | ) | Board Case Nos. |
| **v.** | ) | 06-CA-248017 |
| | ) | 06-CA-263791 |
| **NATIONAL LABOR RELATIONS BOARD** | ) | 06-CA-269346 |
| | ) | |
| **Respondent/Cross-Petitioner** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEWSPAPER GUILD OF PITTSBURGH/** | ) | |
| **CWA LOCAL 38061** | ) | |
| | ) | |
| **Intervenor** | ) | |

## PROPOSED ORDER

To the Honorable, the Judges of the United States
  Court of Appeals for the Third Circuit:

Upon the Motion of the National Labor Relations Board for Civil Contempt
and Other Relief, the Court finds that said motion is well taken and should be
granted.

IT IS ORDERED THAT the Respondent, PG Publishing Co., Inc. d/b/a
Pittsburgh-Post Gazette, and its officers, agents, successors, and assigns, are
required to purge themselves of contempt of the Court's March 24, 2025 Order
("the Order") by taking the following steps:

**MOTION ATTACHMENT Q**

1.      Fully comply with the Order, and not in any way, by action or inaction, engage in, induce, encourage, permit, or condone any violation of the Order.

2.      Within seven (7) days of this Contempt Adjudication, provide the Employment Partners Benefits Fund ("the Fund") with the forms it needs to provide bargaining-unit employees with the same health insurance they had before the Company's July 27, 2020 unilateral changes to their health insurance.

3.      Within seven (7) days of notification from the Fund that it has completed the necessary tasks to provide unit employees with the same health insurance they had before, rescind the July 27, 2020 unilateral changes to the unit employees' health insurance, return the unit employees to the Fund, and notify the unit employees that these steps have been taken.

4.      Within fourteen (14) days of the Contempt Adjudication, file a certification on the Court's docket, signed by an appropriate representative on behalf of the Company, attesting to all steps the Company has taken to comply with the Court's March 24 Order and naming the company officials responsible for effectuating compliance.

5.      Pay to the Board all costs, expenses, and reasonable attorneys' fees, calculated at the prevailing District of Columbia market rate, incurred by the Board in the investigation, preparation, presentation, and final disposition of its motion

for contempt.  All of said costs and fees, unless agreed to by the parties, shall be fixed by further order of the Court upon submission by the Board of a certified statement of such costs and expenses.  Should any dispute arise respecting the Board's submission as to which the Court may determine that a hearing is desirable, the Court, in its discretion, may refer such dispute to a special master, upon such terms as the Court shall determine, for a report and recommendation.

6.    Pay to the Union any costs, expenses, and reasonable attorneys' fees, calculated at the prevailing local market rate where work was performed, incurred by the Union in assisting the investigation and final disposition of this motion. All of said costs and fees, unless agreed to by the parties, shall be fixed by further order of the Court upon submission by the Board of a statement of such costs and expenses verified by the Union or its counsel.  Should any dispute arise respecting the Union's submission as to which the Court may determine that a hearing is desirable, the Court, in its discretion, may refer such dispute to a special master, upon such terms as the Court shall determine, for a report and recommendation.

IT IS FURTHER ORDERED:

1.    That if the Company fails to purge itself of its civil contempt of the Court's March 24 Order by the fourteenth (14th) day after this Contempt Adjudication, the Court will impose on the Company an immediate fine of $20,000

(or any other amount the Court deems necessary), and a further fine of $1,000 per day for each ensuing day that the Company fails to purge itself of its contempt.

2.     That upon the continued failure of the Company to purge itself of its civil contempt, this Court will take such other and further actions and grant such other relief as may be just, reasonable, and proper to assure compliance with this Court's March 24 Order, Contempt Adjudication, and as this contempt proceeding may require.

SO ORDERED

_____

United States Court of Appeals
    For the Third Circuit

4