IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
Case No. 24-2788 and 24-3057

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

## INTERVENOR'S RESPONSE TO THE EMERGENCY MOTION OF THE NATIONAL LABOR RELATIONS BOARD FOR ADJUDICATION IN CIVIL CONTEMPT AND FOR OTHER CIVIL RELIEF

The NLRB has moved this Court to adjudge PG Publishing Co., Inc. d/b/a Pittsburgh-Post Gazette (the "Company" or "Post-Gazette") in civil contempt for failing and refusing to comply with an injunction issued by this Court three months ago, on March 24, 2025. [ECF Nos. 80, 57]. Intervenor Newspaper Guild of Pittsburgh/CWA Local 38061 ("Union" or the "Guild") respectfully requests that the NLRB's Motion be granted. As shown in the NLRB's brief and *infra*, civil

1

contempt sanctions are warranted because the Company has failed to comply with the Court's time-sensitive directive to rescind, on request of the Union, the unilateral changes made to bargaining-unit employees' health insurance in July 2020. As this brief is in support of the NLRB's Motion, the Union writes only to highlight certain reasons why sanctions and relief are warranted and clarify what sanctions may be necessary to induce the Post-Gazette to comply with the Court's March 24th Order.

The Union adopts the factual background as fully set forth within the NLRB's Motion for Contempt, with the addition of the following facts and arguments.

1. **Complying with the Court's March 24th Order, as the Post-Gazette claimed they would, is simple.**

As outlined in the NLRB's Motion for Contempt, despite the Union's request, and the Employee Partners Benefits Fund's (the "Fund") facilitation, the Post-Gazette refuses to "rescind the changes in the terms and conditions of employment related to health insurance for its unit employees that were unilaterally implemented on about July 27, 2020." [ECF No. 57]. There is no legitimate reason for the Post-Gazette's delay in complying with the Court's March 24th Order. The process for re-enrolling its employees in the healthcare plan that existed prior to July 27, 2020 is exceptionally easy for the Post-Gazette. The Post-Gazette simply

has to provide the Fund with basic employee information and completed employee enrollment forms. [*See* ECF No. 80, Attach. A].

What is most concerning, is that in its Motion for Clarification regarding the Court's March 24th Order, the Post-Gazette claimed it "will, of course, comply with the Court's Order." [ECF No. 59]. Despite the Court's denial of the Motion for Clarification and Motion for Rehearing [*see* ECF No. 69], the Post-Gazette has betrayed its representation to the Court by wholly refusing to comply with the Court's Order to rescind the unilaterally implemented changes to the terms and conditions related to health insurance. Such non-compliance is deliberate and not surprising, given the Post-Gazette's track record of misrepresenting facts, which has been omnipresent throughout this litigation. For example, it has consistently claimed it gave bargaining unit employees an 8% wage increase. Nothing could be further from the truth; its bargaining unit employees have not had a wage increase in more than twenty years. It is totally unacceptable and inexcusable for the Post-Gazette to continue to flout its legal obligations via bad-faith misrepresentations.

2. **There is no legitimate reason for the Post-Gazette to continue to defy the Court's Order. The Post-Gazette is evading compliance with the Court's March 24th Order in bad faith to avoid paying for its employees' health insurance.**

3

The Company continues to evade the requests from the Union, the Fund, and the NLRB to comply with the Court's Order. The only excuse the Post-Gazette has mustered for its brazen non-compliance was in its Motion for Clarification, when it made the unsubstantiated declaration that the parties are obligated to engage in "effects bargaining" over the health insurance aspect of the Court's March 24th Order. [ECF No. 59]. This Honorable Court subsequently denied that Motion for Clarification. [ECF No. 69]. Following the denial of their Motion for Clarification and Motion for Rehearing, the Post-Gazette has not set forth any reason why it refuses to comply.

However, the Post-Gazette's hidden agenda as to why it will not comply is that, currently, under its unilaterally implemented healthcare, the Post-Gazette requires bargaining unit employees to pay thirty percent of their health insurance premium costs. By contrast, if the Post-Gazette complies with the Court's March 24th Order, it will be obligated to pay more in health insurance costs under the status quo of the expired CBA, as required by arbitrator Jay Nadelbach's award and affirmed by this Court. Complaint of Plaintiff at Ex. C, *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 2020 U.S. Dist. LEXIS 168407 (W.D. Pa. Sept. 14, 2020) (No. 20-CV-00236 at ECF No. 1-3) ("Nabelbach Award"), *aff'd*, 19 F.4th 308 (3d Cir. 2021). Simply put, the Post-Gazette's refusal to abide by this Court's Order allows it to continue to evade its financial and legal obligations to pay more for its employees'

4

health insurance than under its unilaterally-implemented plan and terms. The Company's unlawful recalcitrance is an economic decision, which requires it to do nothing more than "thumb its nose" at the March 24th Order and this Court's authority.

### 3. Appropriate Remedies

**a. The coercive sanctions requested by the NLRB are not enough to pressure the Post-Gazette to comply with the Court's Order, and higher coercive penalties are necessary to avoid the Company simply factoring in the fine into its cost of doing business.**

As the NLRB's motion states, the Court has "broad discretion to fashion an appropriate civil contempt remedy" for a party's failure to honor an order of the Court. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1150, 1158 (3d Cir. 1982)); [ECF No. 80, p.13]. One of the purposes of civil contempt sanctions is to coerce compliance with the Court's Order. *See Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994); *McDonald's Corp v. Victory Inv.*, 727 F.2d 82, 87 (3d Cir. 1984).

The NLRB asks the Court for the imposition of a $20,000 coercive fine, "or any other amount the Court deems necessary," plus an additional $1,000 per day if the Post-Gazette fails to comply within fourteen days following the contempt

order. [ECF No. 80, at p. 15]. While the Union agrees that coercive fines against the Post-Gazette are necessary, and the Union recognizes giving the Post-Gazette a reasonable period to comply before a fine is imposed, $20,000 plus an additional $1,000 per day is insufficient to actually induce the Post-Gazette to obey the Court's Order. Given the Post-Gazette's flagrant disobedience of an order of this Court, higher, and exponentially increasing, fines and the threat of coercive incarceration are necessary to effectuate compliance.

The Post-Gazette has spent years in litigation, making every effort to undermine and destroy the unions representing its workers. For the past several years, it has paid for attorneys from Tennessee, often four at a time, to travel to attend hearings, Board proceedings, and contract negotiations in Pittsburgh. In addition to the aforementioned exorbitant billable tasks, the Post-Gazette pays its lawyers to appeal every single adverse decision, of which there are many, even in the total absence of merit. The Post-Gazette has made clear that money is no object when it comes to its scheme to oust its employees' union. It is overly optimistic to infer that the NLRB's proposed penalties would force the company into compliance with this Court's Order that it has already made clear it does not respect.

Additionally, according to the June 1, 2025 Payroll Roster sent from the Post-Gazette to the Union, the Post-Gazette currently spends $112,547.07 a week

on payroll for bargaining unit employees. Divided by a five-day work week, that is $22,509.41 a day in payroll for only the bargaining unit members, not including any managerial or otherwise exempt staff. The $20,000 coercive fine, requested by the NLRB if the Post-Gazette continues to delay, is less than the cost of one day of payroll to bargaining unit members. Thus, based on past practices of the Post-Gazette, a $20,000 fine will likely be insufficient to coerce the Post-Gazette to comply with the Court's Order because the Post-Gazette will simply factor the fine into the cost of doing business.

Additionally, under the Post-Gazette's unilaterally implemented terms that the Court's Order requires the Post-Gazette to rescind, unit employees are currently paying thirty percent of their health insurance premiums, whereas, the prior terms and conditions relating to health insurance in place before the Post-Gazette unilaterally implemented its terms on July 27, 2020 the Post-Gazette absorbed a greater obligation for payment of health insurance premiums. Thus, reinstating the status quo healthcare terms and conditions as required by the Court's Order will cost the Post-Gazette more than $1,000 a day. Under the NLRB's proposed coercive fines of an additional $1,000 per day of non-compliance, it would be cheaper for the Post-Gazette to continue to not comply and pay the fines than to follow the Court's Order. As the Post-Gazette's management has demonstrated time and time again, they are more interested in

brazen illegal union busting than in complying with the law, especially when it means the Company will save a buck at its employees' expense.

Therefore, to effectively coerce the Post-Gazette to obey the Court's Order, the fine for non-compliance needs to be much higher than $20,000 plus $1,000 per day. It is the Union's position that the fines should increase exponentially per day. For instance, the Union believes that if the additional daily fine doubled for every day of non-compliance, for example $1,000 the first day, $2,000 the second day, and $4,000 the third day, etc., then the exponentially mounting contempt sanctions may actually coerce the Post-Gazette into compliance with the Court's March 24th Order. Further, if the Post-Gazette continues to delay complying with the Court's March 24th Order, then the Union requests that the Court consider the imposition of coercive incarceration of the Post-Gazette's agents responsible for such callous non-compliance.

      b. **In addition to the costs outlined in the NLRB's motion, the Post-Gazette's bargaining unit employees are entitled to recover the insurance premiums they have had to pay since the Court's March 24th Order.**

In addition to coercing compliance with a court order, civil contempt sanctions also serve to compensate a party for losses sustained. *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994). "Compensation in civil contempt proceedings is designed to ensure that the victorious party secures full relief, and to

restore the parties to the position they would have enjoyed if the order had been obeyed." *Primetime 24 Joint Venture v. Telecable Nacional*, 1991 U.S. Dist. LEXIS 20445 at *5 (D.N.J. Oct. 15, 1991) (internal citations omitted). The compensation award in the contempt order "should be fashioned to reimburse the party for its actual damages" and "may not be withheld to the extent that damages are established." *Id*. at *5-6. Additionally, "the objective of a civil contempt decree is to benefit the complainant." *Latrobe Steel Co. v. USW*, 545 F.2d 1336, 1343 (3d Cir. 1976).

Due to the Post-Gazette's non-compliance with the Court's Order over the last three months, the Union's members have had to pay health insurance premiums that they would not have had to pay if the Post-Gazette had timely complied. Unlike under the Post-Gazette's unilaterally implemented terms, the previous terms and conditions regarding healthcare before July 27, 2020 did not require employees to pay thirty percent of the premium on their health insurance. As decided by arbitrator Jay Nadelbach and upheld by this Court, under the status quo of the expired contract, the Post-Gazette was responsible for paying the premiums for its employees to the Fund to maintain the contractual level of benefits under the expired contract. *See* Complaint of Plaintiff at Ex. C, *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 2020 U.S. Dist. LEXIS 168407 (W.D. Pa. Sept.

9

14, 2020) (No. 20-CV-00236 at ECF No. 1-3) ("Nabelbach Award"), *aff'd*, 19 F.4th 308 (3d Cir. 2021).

Because of the Post-Gazette's failure to implement the previous healthcare, the striking bargaining unit members were deprived of the opportunity to return to work and be covered by the healthcare as ordered by the Court. Thus, the Union's compensable losses include not only the last three months of premiums paid by the non-striking bargaining unit employees under the Post-Gazette's unilaterally imposed plan, but also the last three months of premiums paid by striking workers for their other self-paid health insurance plans.

### c. The Union should also be awarded attorneys' fees based on the lodestar method and not the actual fees paid by the Union.

The Court has the discretion to award attorneys' fees and costs to the innocent party as a civil contempt sanction. *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir. 1995). "An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the 'lodestar method.'" *Microsoft Corp. v. United Comput. Res. of N.J.*, Inc.216 F. Supp. 2d 383 (D.N.J. 2002). The lodestar calculation is based on multiplying the number of hours reasonably spent by an attorney on the litigation by a reasonable hourly rate. *Id*. The lodestar method applies to attorneys' fees awards even when

10

the party is represented by lawyers providing their services at no cost. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee"); *see also Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993).

As the Union has been on strike for over two years, and their members have not had a wage increase in more than twenty years, they are not in a financial situation to afford an attorney. As such, the Union's lawyers at Jubelirer, Pass & Intrieri, P.C. and the AFL-CIO have been representing the Union in this matter with minimal or no payment. The Union requests that the Court expressly grant the Union attorneys' fees for their attorneys' time spent in connection with supporting the NLRB's contempt motion and attempting to compel the Post-Gazette to comply with the Court's March 24th Order based on a lodestar calculation and not based on the fees actually paid by the Union to their lawyers.

4. **Conclusion**

The Post-Gazette is determined to evade and delay justice in order to bust the Union. The Company is more concerned with saving itself some money than complying with the law. The Union respectfully asks this Court to grant the

NLRB's Motion and impose the aforementioned civil contempt sanctions on the Post-Gazette for its continued refusal to comply with the Court's March 24th Order.

                                        Respectfully submitted,

                                        */s/Joseph J. Pass*
                                        Joseph J. Pass
                                        J. Skye McCollum
                                        Jubelirer, Pass & Intrieri, P.C.
                                        219 Fort Pitt Boulevard
                                        Pittsburgh, PA 15222
                                        (412)281-3850
                                        jjp@jpilaw.com

                                        Maneesh Sharma AFL-CIO
                                        815 16th St. NW
                                        Washington, D.C. 20006
                                        (202)637-5336
                                        msharma@aflcio.org

                                        *Attorneys for Intervenor*

Date: June 27, 2025

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
Case No. 24-2788 and 24-3057**

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

**CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH
TYPE VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND
VIRUS CHECK**

I, Joseph J. Pass, counsel for Newspaper Guild of Pittsburgh/CWA Local

38061, certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in

good standing of the Bar of the Court of Appeals for the Third Circuit. I further

certify pursuant to Fed. App. P. 32(g) that this document complies with the word limit of Fed. R. App. P. 27(d)(2) because the foregoing document contains 2,422 words (not counting portions excluded from the word count by Rule 32(f)), and this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document is proportionately spaced and has a typeface of 14-point Times New Roman. I further certify that no virus was detected on this file.

Date: June 27, 2025 /s/ *Joseph J. Pass*
Joseph J. Pass, Esquire

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
Case No. 24-2788 and 24-3057

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

## CERTIFICATE OF SERVICE

I, Joseph J. Pass, counsel for Newspaper Guild of Pittsburgh/CWA Local 38061, certify that on June 27, 2025, I filed the foregoing Response to Emergency Motion of the NLRB for Adjudication in Civil Contempt and for Other Civil Relief via the Court's CM/ECF system, causing a Notice of Docket Activity and a copy of the filing to be served upon the following counsel of record who are registered CM/ECF users:

                      Ruth E. Burdick
                      David Seid

Milakshmi V. Rajapakse
Meredith Jason
Joel Heller
National Labor Relations Board
1015 Half Street, SE
Washington, D.C. 20570
Ruth.burdick@nlrb.gov
David.seid@nlrb.gov
Milakshmi.rajapakse@nlrb.gov
Meredith.jason@nlrb.gov
jheller@nlrb.gov

Brian M. Hentosz
Morgan S. Dull
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
bhentosz@littler.com
mdull@littler.com

Pursuant to Local R. App. P. 27.2, no paper copies of this response will be filed unless directed by the Clerk.

Date: June 27, 2025                                     */s/Joseph J. Pass*
                                                        Joseph J. Pass, Esquire