# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No. 24-2788 and 24-3057

PG PUBLISHING CO., INC. d/b/a PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

## INTERVENOR'S REPLY TO PG PUBLISHING CO.'S RESPONSE TO THE MOTION FOR CONTEMPT FILED BY THE NATIONAL LABOR RELATIONS BOARD

In its superfluous one hundred and ninety-six page filing the Post-Gazette contends that its failure to comply with this Court's Order of March 24, 2025 [ECF No. 57] is justified for three bogus reasons. Those three reasons are:

1

I. First, the Company argues that this Honorable Court did not order it to restore the healthcare that existed prior to its illegal unilateral implementation of its healthcare in July 2020.

II. Next, the Post-Gazette argues that the Employee Partners Benefits Fund (the "Fund") requires that the Post-Gazette execute a Participation Agreement in order to obtain its healthcare benefits.

III. Finally, the Company argues that if they were to comply in implementing the pre-July 2020 healthcare, then the status quo requires that a $2,000/$4,000 deductible be restored and that the Fund cannot raise the rates that existed at that time. They also suggest that if that healthcare is to be restored the Fund's premiums must be frozen at the 2020 premium rate.

I. **The Court's March 24th Order Clearly Requires Restoration of the Healthcare that Existed Prior to the Post-Gazette's Illegal Unilateral Changes in July 2020.**

As to the Company's argument that this Honorable Court did not order the Post-Gazette to restore the terms and conditions of the healthcare that were in place prior to their unilateral implementation, that argument was already addressed in the Post-Gazette's Motion for Clarification. [ECF No. 59]. That Motion requested that this Court clarify that all the employer needed was to engage in effects bargaining

after it rescinded the illegally imposed healthcare. Its position was that it need not restore the old conditions once the imposed conditions were rescinded.

In contrast, the National Labor Relations Board and the Intervenor Union contended that when the remedy granted is to rescind illegally imposed conditions, the conditions that were previously in effect must be reinstated. This interpretation is supported by the purpose of injunctions under the NLRA, "to protect the lawful status quo while litigation is pending." *Frankl v. HTH Corp.*, 650 F.3d 1334, 1342 (9th Cir. 2011). In the present case, the status quo that must be protected is the conditions relating to healthcare which existed prior to the unilateral change. The Post-Gazette's refusal to reinstate the health insurance as outlined by the parties' expired CBA means that there is no protection of the status quo. The Company's insistence on conducting "effects bargaining" over healthcare also does nothing to restore or protect the status quo of the terms and conditions related to healthcare. The only interpretation of the Court's March 24th Order that would effectively protect the status quo is that it requires the restoration of the prior health insurance. In denying the Post-Gazette's Motion for Clarification [ECF No. 69], this Honorable Court rejected the Post-Gazette's contention that all it was ordered to do was to engage in effects bargaining over healthcare. Therefore, its argument having already been rejected by this Honorable Court, the Post-Gazette's attempt to reargue this issue is highly inappropriate. The Post-Gazette's own article acknowledges that

the Court's March 24th Order clearly requires the reinstatement of the health insurance in place prior to its July 2020 unilateral changes. *See* Kris B. Mamula, *Court Grants Injunction to Striking Post-Gazette Employees; Company Plans an Appeal*, POST GAZETTE (Mar. 24, 2025, 8:54 PM), https://www.post-gazette.com/business/career-workplace/2025/03/24/post-gazette-union-nlrb-injunction-contract/stories/202503240081. Clearly the Post-Gazette knows what is required by the Court's March 24th Order, and their regurgitation of this rejected defense is nothing but an attempt to relitigate an issue this Honorable Court has already decided.

## II.  The Post-Gazette Does Not Have to Sign a Participation Agreement Because It is Already Legally Required to Pay the Premiums to the Fund

The Company's argument that the Fund requires it to execute a Participation Agreement is wholly untrue. The Fund specifically rejected that assertion. *See* Attach. 1. Mr. Lowe was advised by the attorney for the Fund that "there is no need for the Fund to have a separate Participation Agreement with the Post-Gazette," as the Company is bound to pay the premiums as outlined in the Nadelbach Arbitration Award.[1] *Id*. The Post-Gazette's strange insistence that they refuse to be bound by a

---

[1] This letter (Attach. 1) incorrectly refers to a $750/$1500 deductible plan in place before the parties agreed to raise the deductibles to $850/$1700 for 2016 onward. The NLRB's May 13, 2025 letter (ECF No. 80, Attach. P) reflects the correct plan.

Participation Agreement is based solely on the fact that they do not want to have to pay the Fund the premium costs they will owe the Fund to implement the level of benefits required by the expired CBA. The Post-Gazette cannot evade its obligations simply by refusing to pay the Fund the required premium costs.

### III. The Post-Gazette is Required to Pay the Premiums Associated with the Contractually Agreed to $850/$1700 Deductible Plan

Finally, the Post-Gazette argues that any implementation of the healthcare plan that existed prior to its illegal removal requires that a $2,000/$4,000 deductible plan, instead of an $850/$1,700 deductible plan, is appropriate and its obligation for payment cannot be increased from the 2020 costs. Like the Post-Gazette's other arguments, this argument is not supported by the facts and is nothing but convoluted logic and gaslighting. In bad faith, the Post-Gazette is attempting to relitigate the decision of arbitrator Jay Nadelbach, which was upheld by this Court.

The healthcare plan that the Guild agreed to is set forth in Exhibit B of the Guild's 2014-2017 expired Collective Bargaining Agreement. That Agreement limited the Post-Gazette's obligation for premium increases to 5% for each of the years 2015 and 2016. In 2016, the premium increase was 5.9%. The employer paid an additional 5% but, rather than the employees paying for the additional .9%, the parties agreed to increase the deductibles from $1,500 to $1,700 for family coverage and $750.00 to $850.00 for single coverage. After the CBA expired in 2017,

5

additional increases were imposed by the Fund and a dispute arose as to who was obligated to pay those increased premiums.[2] The Post-Gazette refused to pay the increased premiums as they were contractually obligated to do, and as a result, the Fund was forced to increase the deductibles for the employees to match the deficient premiums paid by the Company. The $2,000/$4,000 deductibles were only implemented following the Post-Gazette's unlawful delinquency in premium payments to the Fund *after* July 2020.

    The News Guild's Collective Bargaining Agreement contained an evergreen clause which allowed it to file a grievance over contractual breaches. As a result, the Guild proceeded to arbitration and argued that the Collective Bargaining Agreement, as well as the parties' past practice, required that the employer pay any increases in order to maintain the existing healthcare benefits. In that arbitration, the employer's former HR Director confirmed that it had been the employer's past practice to pay all increases after the contract term expired and the parties had not reached a new agreement. In December 2019, Arbitrator Nadelbach rendered his award. The Nadelbach Award made it crystal clear that under the expired contract, and in accordance with past practices, the employer was obligated to pay any and

---

[2] The Post Gazette cites a Board decision (*PG Publishing Co.*, 368 NLRB No. 41 (Aug. 22, 2019)) published before the Nadelbach Award that has no bearing on the interpretation of the parties' CBA or on their past practices concerning terms and conditions related to health insurance. The Nadelbach Award, which was affirmed by this Court, is the decision in which the obligation to pay the premiums associated with the $850/$1700 deductible plan are made clear.

all increases in order to maintain the specific benefits set forth in the parties' Agreement. The arbitrator ruled in relevant part as follows:

. . . .

> 2. The grievance is upheld. The company violated the parties Collective Bargaining by failing to maintain agreed-upon healthcare benefits established at Article XX and as set forth in Exhibit B of the Agreement.
>
> 3. The company is directed to pay the amount necessary to maintain the specific health insurance benefit level set forth therein. (i.e., all increases that may be required to keep the contractual level of benefits), subject to and until a new Collective Bargaining Agreement is negotiated and reached between the parties.
>
> 4. Employees should be made whole for any out-of-pocket monies paid as a result of the company's failure to maintain the contractual level of benefits.
>
> . . . .

Complaint of Plaintiff at Ex. C, *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 2020 U.S. Dist. LEXIS 168407 (W.D. Pa. Sept. 14, 2020) (No. 20-CV-00236 at ECF No. 1-3) ("Nabelbach Award"), aff'd, 19 F.4th 308 (3d Cir. 2021).Nadelbach's Award made it crystal clear that the employer was obligated to pay any and all increases in order to maintain the healthcare benefits set forth in the Guild Agreement. As the Post-Gazette is wont to do, it appealed the Nadelbach Award. The Company appealed to the United States District Court Magistrate, then to the Article III District Court Judge, and finally to this Honorable Court. All three affirmed the

Nadelbach Award. *See PG Publishing Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308 (3d Cir. 2021).

While making their futile attempts to appeal the Nadelbach Award, the Company, foreseeing the failure of their appeals, elected to illegally declare an impasse and implement new terms and conditions in July 2020, seemingly to avoid complying with the arbitration award.

Unbelievably, in response to the NLRB's contempt Motion, the Post-Gazette argued:

> The Post-Gazette anticipates that the Labor Board may argue that a return to the contribution levels under the Agreement is appropriate because of this Court's decision in PG Publishing Inc, the Newspaper Guild of Pittsburgh, 19 Fed 4th 308 (3rd Cir. 2021) concerning an arbitration award. The case, however, is irrelevant because the arbitration award was not enforced until 16 months after the Post-Gazette declared impasse.

[ECF No. 87, fn. 1].

In plain words they ask this Honorable Court to disregard its own decision because the Company was able to evade compliance with the Nadelbach Award for sixteen months by appealing it, without merit, through the judicial system. Its argument is wholly without foundation because the Arbitration Award clearly established the prevailing status quo ante prior to the unlawful implementation. What is most troubling and disingenuous about the Post-Gazette's argument is that after the Nadelbach Award was confirmed by this Honorable Court (16 months after it

was issued), the Post-Gazette partially complied with the Award by paying every bargaining unit employee the amount of money employees spent on deductibles that were over and above the $850/$1700 deductibles in place at the time of the Nadelbach Award up to the date the Company implemented its unlawful terms and conditions. Simply put, the argument advanced in footnote 1 of ECF 87 is absurd and counter to the law. The Post-Gazette is attempting to gaslight this Court. Clearly, the Post-Gazette is aware that the Nadelbach Award requires it to pay the premiums necessary to maintain the benefits under the Fund's $850/$1700 deductible plan and that the Nadelbach Award establishes the prevailing status quo ante to the Post-Gazette's unlawful implementation. Their knowledge is exhibited by the fact that the Post-Gazette paid for damages that occurred up to the date of its unlawful implementation.

The Nadelbach Award, which was affirmed by this Honorable Court, made clear that the healthcare plan contractually agreed to in place prior to July 27, 2020, had deductibles of $850.00 for single coverage and $1,700.00 for family coverage and obligated the employer to continue to pay whatever increases were necessary to preserve those contractual benefits until a new Collective Bargaining Agreement was reached. If the Post-Gazette had not illegally implemented its unilaterally imposed healthcare program in July 2020, then, under the Nadelbach Award, the $850/$1700 health insurance would have still been in effect, and the employer would be obligated

to maintain the healthcare benefits in that Agreement until a new Agreement or a lawful impasse were reached. Instead, the employer unilaterally implemented new terms and conditions of employment, including new health insurance, without reaching a bona fide impasse. Had they not acted illegally, the employer would have been obligated to continue to pay all increased premium costs to maintain the benefits as set forth in Exhibit B of the parties' expired CBA and the Nadelbach Award.

The Post-Gazette's argument would place the risk and burden of its unlawful acts on the employees. According to the Company, it should not have to cover any increases in premiums that occurred while its unlawful acts were being litigated. But that would reward the Post-Gazette for its unlawful behavior, and punish the employees. That should not be how the justice system works.

Needless to say, when rescinding the illegally imposed healthcare the Post-Gazette is obligated to reinstate the previous healthcare which provided for deductibles of $850.00 for individuals and $1,700.00 for families, and it is required, per the Nadelbach Award, to pay whatever premium increases are imposed in order to maintain those benefits.

**CONCLUSION**

It is well past time for the Post-Gazette to comply with the Court's clear order to restore the status quo as it relates to the healthcare terms and conditions under the

expired collective bargaining agreement. The Post-Gazette's continued gaslighting and non-compliance have demonstrated that only the civil contempt sanctions outlined in the NLRB's Motion and the Union's Response are adequate to coerce the Post-Gazette to comply with the March 24th Order.

                                          Respectfully submitted,

                                          */s/Joseph J. Pass*
                                          Joseph J. Pass
                                          jjp@jpilaw.com
                                          J. Skye McCollum
                                          jsm@jpilaw.com
                                          Jubelirer, Pass & Intrieri, P.C.
                                          219 Fort Pitt Boulevard
                                          Pittsburgh, PA 15222
                                          (412)281-3850

                                          Maneesh Sharma AFL-CIO
                                          815 16th St. NW Washington,
                                          D.C. 20006 (202)637-5336
                                          msharma@aflcio.org

                                          *Attorneys for Intervenor*

Date: July 2, 2025

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT
### Case No. 24-2788 and 24-3057

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

      Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

      Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

      Intervenor.

### CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Joseph J. Pass, counsel for Newspaper Guild of Pittsburgh/CWA Local 38061, certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit. I further certify pursuant to Fed. App. P. 32(g) that this document complies with the word limit of Fed. R. App. P. 27(d)(2) because the foregoing document contains 2137 words (not counting portions excluded from the word count by Rule 32(f)), and this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document is proportionately spaced and has a typeface of 14-point Times New Roman. I further certify that no virus was detected on this file.

Date: July 2, 2025                                     */s/ Joseph J. Pass*
                                                              Joseph J. Pass, Esquire

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**
**Case No. 24-2788 and 24-3057**

PG PUBLISHING CO., INC. d/b/a
PITTSBURGH POST-GAZETTE,

    Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,

    Respondent/Cross-Petitioner,

and

NEWSPAPER GUILD OF
PITTSBURGH/CWA LOCAL 38061,

    Intervenor.

**CERTIFICATE OF SERVICE**

I, Joseph J. Pass, counsel for Newspaper Guild of Pittsburgh/CWA Local 38061, certify that on July 2, 2025, I filed the foregoing Reply to PG Publishing Co.'s Response via the Court's CM/ECF system, causing a Notice of Docket Activity and a copy of the filing to be served upon the following counsel of record who are registered CM/ECF users:

Ruth E. Burdick
David Seid
Milakshmi V. Rajapakse
Meredith Jason

Joel Heller
National Labor Relations Board
1015 Half Street, SE
Washington, D.C. 20570
Ruth.burdick@nlrb.gov
David.seid@nlrb.gov
Milakshmi.rajapakse@nlrb.gov
Meredith.jason@nlrb.gov
Joel.heller@nlrb.gov


Brian M. Hentosz
Morgan S. Dull
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
bhentosz@littler.com
mdull@littler.com

Pursuant to Local R. App. P. 27.2, no paper copies of this motion will be filed unless directed by the Clerk.

Date: July 2, 2025　　　　　　　　　　　　　　　　*/s/Joseph J. Pass*
　　　　　　　　　　　　　　　　　　　　　　　　Joseph J. Pass, Esquire



**LOGAN, METTLEY & NEWCOMER, PLC**

Levi K. Logan
5 Hot Metal Street, Suite 203
Pittsburgh, PA 15203
lkl@lmnlawgroup.com
(412) 417-5506

May 28, 2025

Richard C. Lowe
King & Ballow
26 Century Boulevard
Suite NT 700
Nashville, TN 37214
Via email to: rlowe@kingballow.com

RE: Employment Partners Benefits Fund (the "Fund") – Newspaper Guild of Pittsburgh/CWA Local 38061 (the "Union")

Dear Attorney Lowe:

After receiving your May 9, 2025 letter, Nancy Wilson from the National Labor Relations Board reached out to me to discuss the coverage to be obtained by the Post-Gazette for the Union members. It was confirmed that the NLRB's position is that the coverage to be offered should match what was set forth in the 2013-2017 CBA. This coverage included deductibles of $750/$1,500. This also appears to be the position taken by the arbitrator and the Courts in the dispute between the Post-Gazette and the Union. The Fund is not able to defy the stance held by the NLRB or the Courts which are dealing with the dispute.

With regards to your claim that the Post-Gazette has never been a signatory, that is not accurate. The 2013-2017 CBA required contributions be made by the Post-Gazette to the Fund for the Union members' coverage. The terms of the CBA will continue to apply until a new agreement is reached between the Post-Gazette and the Union. Therefore, there is no need for the Fund to have a separate Participation Agreement with the Post-Gazette. The Fund will also not agree to the written understanding you proposed in your May 9, 2025 letter.

If you have any questions, please feel free to contact me directly.

Sincerely,

*Levi K. Logan*

Levi K. Logan

cc: William Parry, Jr. (via email)