**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-2788 and 24-3057
_____

PG PUBLISHING CO., INC,
d/b/a Pittsburgh Post-Gazette,
Petitioner in No. 24-2788

v.

NATIONAL LABOR RELATIONS BOARD

NEWSPAPER GUILD OF PITTSBURGH/CWA LOCAL 38061,
Intervenor

&

NATIONAL LABOR RELATIONS BOARD,
Petitioner in No. 24-3057

NEWSPAPER GUILD OF PITTSBURGH/CWA LOCAL 38061,
Intervenor

v.

PG PUBLISHING CO INC,
d/b/a Pittsburgh Post-Gazette
_____

On Petition for Review and Application for Enforcement from the National Labor
Relations Board
(NLRB Docket Nos. 06-CA-248017, 06-CA-263791, 06-CA-269346)
Administrative Law Judge Geoffrey Carter
_____

Argued July 7, 2025
_____

Before:  RESTREPO, BIBAS, and CHUNG, *Circuit Judges*

(Filed November 10, 2025)

Morgan S. Dull
Brian M. Hentosz          **ARGUED**
Littler Mendelson
One PPG Place
Suite 2400
Pittsburgh, PA 15222
　　*Counsel for Petitioner/Respondent PG Publishing Co., Inc, d/b/a Pittsburgh Post-Gazette*

Ruth E. Burdick
Joel Heller              **ARGUED**
Milakshmi V. Rajapakse
National Labor Relations Board
Appellate and Supreme Court Litigation Branch
1015 Half Street SE
Washington, DC 20570
　　*Counsel for Respondent/Petitioner National Labor Relations Board*

Jacqueline S. McCollum
Joseph J. Pass
Jubelirer Pass & Intrieri
219 Fort Pitt Boulevard
1st Floor
Pittsburgh, PA  15222

Maneesh Sharma          **ARGUED**
AFL-CIO
815 16th Street NW
6th Floor
Washington, DC  20006
　　*Counsel for Intervenor Newspaper Guild of Pittsburgh Communication Workers of America AFL-CIO Local 38061*

---

OPINION[*]

---

CHUNG, Circuit Judge.

This case arises out of a long-running labor dispute between PG Publishing Co., Inc. d/b/a Pittsburgh Post-Gazette ("PG Publishing") and the Newspaper Guild of Pittsburgh / CWA Local 38061 (the "Guild"), which serves as the exclusive collective bargaining representative of certain employees, including editorial department employees, publishers, secretaries, clerical employees, security guards, and others. In July 2020, PG Publishing declared that the parties were at an impasse and unilaterally implemented terms and conditions of employment upon those employees.

Acting on unfair labor practice charges filed by the Guild, the National Labor Relations Board's Regional Director, represented by its general counsel ("General Counsel"), filed a consolidated complaint against PG Publishing.[1] The ALJ concluded that PG Publishing violated Sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act") by bargaining in bad faith, unlawfully declaring impasse, and surveilling employees in the exercise of their rights under the Act and ordered certain remedies as a result. PG Publishing excepted to the ALJ's decision before the National Labor Relations

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The Guild sought permission to intervene, ECF No. 10, which was granted, ECF No. 17.

Board (the "Board"), but the Board adopted the ALJ's decision in full and ordered additional remedies. PG Publishing filed a petition for review of the Board's Decision and Order (the "Order"), and the General Counsel cross-applied for enforcement of its Order. We will deny the petition for review and grant the General Counsel's application for enforcement.

I. **BACKGROUND**[2]

PG Publishing and the Guild executed successive collective bargaining agreements between 2014 and 2017; however, since 2017, the parties have been unable to agree on terms for a new agreement.

On August 6, 2019, PG Publishing presented the Guild with a "best offer" contract proposal. This proposal reflected PG Publishing's prior offers on most issues. On September 6, 2019, the parties met again. At this meeting, the Guild presented a counterproposal that included changes to bargaining unit jurisdiction, the use of stringers,[3] wages, and sick leave and short-term disability coverage. The parties continued to disagree on various issues, but did not review the entire Guild proposal in the September 6 bargaining session. The Guild's first charge was filed on September 11, 2019, in which the Guild alleged that PG Publishing violated Section 8(a)(5) of the Act

---

[2]   Because we write for the parties, we recite only the facts pertinent to our decision.

[3]   A "stringer" refers to a journalist working as an independent contractor rather than as an employee of the paper.

by "fail[ing] and refus[ing] to bargain in good faith" over the preceding six months. JA145–47.

After the September 2019 meeting, the parties met again in February 2020, but failed to resolve key issues, including wages, hours, and bargaining unit jurisdiction. The parties did not meet for their next scheduled bargaining session due to the COVID pandemic. The Guild canceled this meeting, stating that after years of "simply going through the worthless motions" of trying to reach a resolution, meeting during the pandemic was not worth the risk to the lives of the parties. By May 22, 2020, the parties had still not met. On that date, PG Publishing sent a written response to the Guild's September 6, 2019, contract proposal. The Guild did not respond. On June 12, 2020, PG Publishing sent a letter to the Guild to convey its "last, best, and final offer" (the "Final Offer"). Most of the proposals in the Final Offer were the same as those offered on August 6, 2019. After an exchange of letters in which the parties expressed disagreement as to whether impasse had been reached, PG Publishing declared impasse and unilaterally implemented terms and conditions of employment on July 27, 2020. Although most of the implemented terms were the same as those set forth in its Final Offer, some were better for employees. On July 29, the Guild filed its second charge against PG Publishing with the Board, alleging that PG Publishing (1) "failed and refused to engage in good faith bargaining for a successor contract" and (2) "unlawfully declared impasse," and "unilaterally implemented portions of its 'Final Offer' … in violation of Section 8(a)(5) of the Act." JA150.

In September and October 2020, the Guild held rallies protesting PG Publishing's decision to declare impasse and to unilaterally impose contract terms, including in front of the home of PG Publishing's publisher. PG Publishing hired two security guards to be present during these rallies, and two of these guards appeared to take photographs of rally participants. On November 20, 2020, the Guild filed another charge against PG Publishing, alleging that PG Publishing "has conducted surveillance of union activities" in violation of the Act. JA152.

Acting on the charges filed by the Guild, the Board's Regional Director issued a Consolidated Complaint against PG Publishing, similarly alleging three violations of the Act. After a hearing, on January 6, 2023, an ALJ issued a decision finding that PG Publishing committed each violation as charged by "engag[ing] in overall bad-faith bargaining by presenting contract proposals that, when considered as a whole, evidence an intent not to reach agreement;" by "prematurely declaring impasse;" and by unlawfully surveilling protestors. JA25, 35. The ALJ ordered, among other things, that PG Publishing "[m]ake bargaining unit employees whole for any loss of earnings and other benefits, and for any other direct or foreseeable pecuniary harms suffered as a result of the unlawful unilateral changes to terms and conditions of employment … with interest." JA75.

On September 20, 2024, the Board issued the Order affirming the ALJ's findings of fact and remedies imposed and further ordering PG Publishing to compensate the Guild for bargaining expenses it incurred during the time PG Publishing was found to have engaged in bad faith bargaining.

In support of its petition, and in response to the application for enforcement, PG Publishing argues the Board's decision was in error because (1) the Board erroneously concluded that it bargained in bad faith; (2) it was privileged to declare impasse and unilaterally implement its bargaining proposals; (3) the Board's finding that it unlawfully surveilled employees is not supported by substantial evidence; and, (4) the Board lacked authority to issue certain make-whole remedies.

## II.   DISCUSSION[4]

### A.   Standard of Review

Our "review of orders of the Board is highly deferential." Trimm Assocs., Inc. v. NLRB, 351 F.3d 99, 102 (3d Cir. 2003). "We exercise plenary review over questions of law and the Board's application of legal precepts." Spectacor Mgmt. Grp. v. NLRB, 320 F.3d 385, 390 (3d Cir. 2003). "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). Deference is particularly important in the collective bargaining context because "assessing … the dynamics of collective bargaining … is precisely the kind of judgment that … should be left to the Board." Charles D. Bonnano Linen Serv., Inc. v. NLRB, 454 U.S. 404, 413 (1982).

"When the Board adopts an ALJ's decision, we review the ALJ's determinations; when it adopts the ALJ's decision in part, we review both the Board's and ALJ's

---

[4]   The Board had jurisdiction under Section 10(a) of the Act. We have jurisdiction under Sections 10(e) and (f) of the Act. 29 U.S.C. § 160(e), (f).

decisions." NLRB v. Starbucks Corp., 125 F.4th 78, 86 (3d Cir. 2024). Here the Board adopted the ALJ's determinations but modified the Order's remedies, so we will consider both the ALJ's order and the Board's Order, as needed.

B.  Analysis

1.  The Board Did Not Err in Finding PG Publishing Violated Sections 8(a)(1) and (5) of the Act by Bargaining in Bad Faith

PG Publishing argues that the ALJ improperly found that it bargained in bad faith because the ALJ's decision was based solely on the substance of PG Publishing's bargaining proposals. We disagree.

Section 8(a)(5) of the Act provides that it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5). In determining whether a party has violated its statutory duty to bargain in good faith, the totality of a party's conduct is relevant. See Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1103 (1st Cir. 1981); Teamsters Loc. Union No. 515, Affiliated With Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. N.L.R.B., 906 F.2d 719, 726 (D.C. Cir. 1990); In re Public Serv. Co. of Oklahoma (PSO), 334 N.L.R.B. 487, 487 (2001). While a party is not required to make concessions or yield on a genuinely held position, "rigid adherence to disadvantageous proposals *may* provide a basis for inferring bad faith." Teamsters Loc. Union No. 515, 906 F.2d at 726. Where the employer's proposals leave the union members with substantially fewer rights than the law would provide them without a contract, an inference of bad faith may be appropriate. See e.g., District Hospital Partners, L.P. v. N.L.R.B., 141 F.4th 1279, 1294

8

(D.C. Cir. 2025). The ALJ found that PG Publishing's proposals warranted such an inference here and noted that a range of PG Publishing's proposals were "at odds with the basic concept of a collective-bargaining agreement." JA68.

Substantial evidence supports the ALJ's finding that PG Publishing bargained in bad faith. PG Publishing's proposals *as a whole* would have required the Guild to cede to PG Publishing the most fundamental of employment terms. For instance, PG Publishing could encroach on the Guild's jurisdiction by subcontracting work and PG Publishing would have unilateral control over work hours. Additionally, the Final Offer vastly expanded the expired agreement's no-strike clause and scaled back employees' healthcare. Guild members would have been afforded more rights working without a contract than by accepting all of PG Publishing's proposals. When considering the totality of PG Publishing's proposals, as the ALJ did, substantial evidence supports the ALJ's finding of bad faith.

PG Publishing attempts to create a rule that the substance of the employer's proposals can never evince bad faith bargaining. None of the cases it cites, however, precludes an ALJ from examining "the totality of the party's conduct," including all its proposals together, to decide whether a party has met its statutory obligation to bargain in good faith. Because that is what the ALJ did here, we will deny PG Publishing's petition and grant the General Counsel's application to enforce that portion of the Order which found that PG Publishing bargained in bad faith.

    2.    <u>The Board Did Not Err in Finding PB Publishing Violated Sections 8(a)(1) and (5) of the Act by Improperly Declaring Impasse</u>

PG Publishing next argues that the ALJ erred in finding that it improperly declared impasse. Again, we disagree.

An employer violates Sections 8(a)(1) and (5) of the Act "if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment." Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 198 (1991). Impasse "describe[s] that point in labor negotiations in which there is sufficient disagreement over a mandatory subject of bargaining to permit unilateral action on the subject by one of the parties." Saunders House v. N.L.R.B., 719 F.2d 683, 687 (3d Cir. 1983). The Board considers five factors to determine whether impasse has been reached: "' [1] [t]he bargaining history, [2] the good faith of the parties in negotiations, [3] the length of the negotiations, [4] the importance of the issue or issues as to which there is disagreement, [and] [5] the contemporaneous understanding of the parties as to the state of negotiations.'" Id. (quoting Taft Broadcasting Co., 163 N.L.R.B. 475, 478 (1967)). The second factor is particularly important as we have said that, when the asserted deadlock is caused by bad faith by one of the parties, "it is manifest that there can be no legally cognizable impasse … which justifies unilateral action." Indus. Union of Marine and Shipbuilding Workers of America, AFL-CIO v. N.L.R.B., 320 F.2d 615, 621 (3d Cir. 1963). Our review of the record reveals that substantial evidence supports the ALJ's finding that no impasse had occurred by July 27, 2020.

As to the second factor and as discussed above, there is substantial evidence in the record that PG Publishing bargained in bad faith. The ALJ leaned heavily on PG

Publishing's bad faith in finding impasse was prematurely declared, which is consistent with our precedent.  See id.

In considering the parties' understanding of the state of negotiations, the ALJ found that PG Publishing declared impasse "at a time in negotiations when neither party would have been warranted in assuming that further bargaining would be futile and when neither party could have reasonably believed that they were at the end of their rope." JA70.  Substantial evidence supports this conclusion.  Specifically, on July 27, 2020, the parties had not finished discussing the Guild's most recent proposal from September 2019 and the country was in the midst of a pandemic.  After the Guild sent its Final Offer on June 12, 2020, the parties exchanged letters concerning the state of negotiations.  On July 20, 2020, the Guild stated that it was willing to meet with PG Publishing to go through the Guild's September 2019 offer, and asked PG Publishing for dates on which it could meet.  PG Publishing did not respond to this letter.  Instead, it declared impasse a week later.

The ALJ found that other factors—such as the length of negotiations and the fact that the parties' disagreement concerned the most important issues—were outweighed by the findings that PG Publishing bargained in bad faith and declared impasse when neither party could have assumed that further negotiations were futile.  When looking at all factors together, according special weight to PG Publishing's bad faith, Indus. Union of Marine and Shipbuilding Workers of America, AFL-CIO, 320 F.2d at 621, substantial evidence supports the ALJ's finding that PG Publishing prematurely declared impasse.

Accordingly, we will deny PG Publishing's petition and grant the General

11

Counsel's application to enforce that part of the Order finding that PG Publishing violated Sections 8(a)(1) and (5) of the Act by improperly declaring impasse.

### 3. Substantial Evidence Supports the ALJ's Finding that PG Publishing Engaged in Unlawful Surveillance

Section 8(a)(1) of the Act makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of" employees' right to engage in concerted activities. 29 U.S.C. § 158; see also id. at § 157. "Conduct which gives the impression of surveillance violates section 8(a)(1) if that conduct reasonably tends to interfere with, restrain, or coerce employees in the exercise of their [] rights. There need not be actual interference or coercion to have a section 8(a)(1) violation." Hanlon & Wilson Co. v. NLRB, 738 F.2d 606, 613 (3d Cir. 1984).

Here, the ALJ found that security guards hired by PG Publishing appeared to take photographs of Guild members at their rallies across the street from publisher John Block's home in October 2020. PG Publishing counters that there was no photographic evidence of the alleged surveillance. To the contrary, photographs offered at the hearing clearly show the behavior described. Moreover, the ALJ found that the evidence did not support a conclusion that the photographs were taken for any other purpose, such as documenting Guild members trespassing upon private property. Given these circumstances, substantial evidence supports the ALJ's conclusion that the employer gave "the *impression* of surveillance" in violation of Section 8(a)(1). Hanlon, 738 F.2d at 613 (emphasis added); see e.g. U.S. Steel Corp. v. N.L.R.B., 682 F.2d 98, 101 (3d Cir. 1982).

> 4. This Court Lacks Jurisdiction Under Section 10(e) of the Act to Consider PG Publishing's Challenge to the Make-Whole Remedies

In addition to the remedies imposed by the ALJ, the Board ordered PG Publishing to pay make-whole remedies consistent with the Board's decision in Thryv, Inc., 372 N.L.R.B. No. 22, 2022 WL 17974951 (Dec. 13, 2022). PG Publishing argues that the Board lacked the authority to order this relief. The Board counters that we lack jurisdiction to consider this argument because PG Publishing failed to raise it before the Board.

Section 10(e) of the Act provides that "[n]o objection that has not been urged before the Board … shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). "The question for forfeiture is whether the Board received 'adequate notice of the basis for the objection.'" Starbucks Corp., 125 F.4th at 94 (quoting NLRB v. FedEx Freight, Inc., 832 F.3d 432, 437 (3d Cir. 2016)).

PG Publishing failed to place the Board on adequate notice of the basis for its objection to the so-called Thryv remedy. First, while PG Publishing did except to the ALJ's order to compensate workers for "direct or other foreseeable pecuniary harms," A213, it did not provide the *basis* for its objection. Merely quoting the remedy from the text of the ALJ's order, without expounding on the rationale for the objection, is insufficient to preserve the issue. See 29 C.F.R. 102.46 (stating that "[e]ach exception must … [s]pecify the questions of procedure, fact, law, or policy to which exception is taken … and … "[c]oncisely state the grounds for the objection"); 3484, Inc. v. NLRB,

13

137 F.4th 1093, 1115 (10th Cir. 2025); Nova Southeastern Univ. v. NLRB, 807 F.3d 308, 313 (D.C. Cir. 2015).  As for the Board's additional remedy of ordering PG Publishing to compensate the Guild for the bargaining expenses it incurred while bargaining, PG Publishing forfeited this challenge because it did not object before the Board despite knowing that the General Counsel sought the remedy.

Accordingly, PG Publishing did not preserve its argument with respect to the Board's Thryv remedy, and we lack jurisdiction under Section 10(e) of the Act to disturb this part of the Order.  See 3484, Inc., 137 F.4th at 1115 (finding that the employer did not preserve its Thryv argument because there, as here, the employer "did not state, or even hint, that one of the grounds for its objection was the absence of statutory authority for the remedy").[5]

## III.   CONCLUSION

For the reasons set forth above, we will deny the petition for review and grant the application for enforcement.

---

[5] PG Publishing argues that we should not require exhaustion because case law decided after the ALJ's decision supports its current objection.  See Starbucks Corp., 125 F.4th 78 (3d Cir. Dec. 27, 2024) (concluding the Board exceeded its authority under the Act by awarding compensatory damages beyond what the employer unlawfully withheld).  It reasons that because Starbucks had not yet been decided, it could not have raised a similar objection to the Board.  We disagree.  Nothing prevented PG Publishing from raising its argument against the Thryv remedy before the Board.